THE STATE OF OHIO, APPELLEE, *v.*
GRIMSLEY, APPELLANT.

(No. C-810255—Decided
February 10, 1982.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. Christian J. Schaefer* and *Mr. Gerald W. Krumpelbeck,* for appellee. *Mr. John W. Hauck,* for appellant.

BLACK, J. Ms. Grimsley was convicted in a bench trial of driving under the influence of alcohol in violation of R.C. 4511.19. An intoxilyzer test indicated a concentration of twenty-one hundreds of one percent (0.21 percent) by weight of alcohol in her blood. The first of her four assignments claims error in overruling her demand for a jury trial, and we agree with this claim. The conviction must be reversed and the case remanded for further proceedings.

The other three assignments of error raise issues about statutory interpretation and proof of the affirmative defense of insanity that are likely to arise because a new trial is likely. *Parton* v. *Weilnau* (1959), 169 Ohio St. 145 [8 O.O.2d 134]. We believe App. R. 12(A) requires us to address these issues, which we will consider in the following order: whether R.C. 4511.19 imposes strict criminal liability so that proof of a culpable mental state is not necessary (the fourth assignment of error); whether the actions of a person with a multiple personality disorder are voluntary when she is dissociated from her primary personality and in the state of consciousness of a secondary personality (the second assignment of error); and whether that person in such a state of consciousness is legally insane (the third assignment of error).

I

The first assignment of error raises

procedural questions about a misdemeanant's right to a jury trial. Charged with driving under the influence of alcohol on September 2, 1980, appellant filed a written jury demand while she was represented by her first lawyer. On his advice, she changed her plea of not guilty to no contest on October 22, 1980, but the judge failed to inform her of the effect of the pleas of guilty, no contest and not guilty as mandated by Crim. R. 11(E). Concurrently, the court accepted appellant's written waiver of a trial by jury, complying with the requirement of R.C. 2945.05.[1] She was then found guilty, and the case was continued for sentencing on November 20, 1980, after receipt of a presentence report. That sentencing did not take place.

Appellant changed lawyers, and on November 5, 1980, her new lawyer filed a motion under Crim. R. 32.1 to withdraw her plea of no contest. At a hearing on November 13, 1980, the court allowed her to withdraw the earlier plea and enter a plea of not guilty. Appellant's oral request for a jury trial was denied, and the case was referred to the assignment commissioner for trial setting. However, on November 26, 1980, before the trial date was set appellant filed a written jury demand, and the judge promptly denied that demand in open court. He again referred the case to the assignment commissioner for trial setting, and the record indicates that later that same day, the case was set for trial on December 31, 1980. After a continuance not pertinent to this appeal, the trial was held on January 29, 1981, and appellant was found guilty by the court sitting without a jury.

We hold that the court erred when it denied appellant's second jury demand. R.C. 2945.05 states that a waiver of trial by jury may be withdrawn by the defendant at any time before commencement of the trial,[2] and Crim. R. 23(A)[3] provides that in petty offense cases, a defendant

---

[1] Although the written waiver did not follow the wording set forth in R.C. 2945.05 (see fn. 2 below), this defect was not presented by the appellant as an argument that the first jury demand was not legally waived and remained in full force and effect. Nor was it claimed that the signature of "Roberta Grimsley" on the waiver was not appellant's. We therefore ignore these issues.

[2] R.C. 2945.05 reads in full as follows:

"In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I .........., defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury.

"Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial."

In *State* v. *Tate* (1979), 59 Ohio St. 2d 50 [13 O.O.3d 36], the Supreme Court held that this statute is not superceded by Crim. R. 23(A) but remains effective; it prescribes the mandatory procedure for waiving a jury trial in a petty offense case, once a jury has been demanded under Crim. R. 23(A).

[3] Crim. R. 23(A) reads in full as follows:

"(A) Trial by jury. In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by jury. Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney. In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto."

may demand a jury trial in a writing filed not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Having duly withdrawn her waiver as she had a right to do, appellant filed her jury demand on November 26, 1980, before the case was set down for trial, in complete compliance with Crim. R. 23(A). The first assignment of error has merit.

## II

Appellant asserts that the court erred when it held that R.C. 4511.19 imposes strict criminal liability. Because this statute does not specify any degree of culpability, the question is whether it "plainly indicates a purpose to impose strict criminal liability for the conduct described in such section." R.C. 2901.21(B)[4]

We hold that R.C. 4511.19 imposes strict criminal liability. We find in the language chosen by the legislature a plainly indicated purpose to do so, because the overall design of the statute is to protect against the hazards to life, limb and property created by drivers who have consumed so much alcohol that their faculties are impaired.[5] *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140 [38 O.O.2d 366]. Further, the legislature created an elaborate procedure to determine the concentration by weight of alcohol in an accused's blood, together with a presumption that if that concentration is ten hundredths of one percent (0.10 percent) or more, the accused is under the influence of alcohol. The legislature defined the offense in terms of the factual presence of alcoholic influence, without reference to the offender's mental state. Finally, alcoholic abuses are strictly controlled by the General Assembly. A liquor permit, for instance, may be suspended for serving intoxicants to minors even though the seller had no knowledge of the customer's age and may have been deceived by appearances. *Hanewald* v. *Bd. of Liquor Control* (1955), 101 Ohio App. 375 [1 O.O.2d 313]; *State* v. *Burke* (Dec. 19, 1979), Hamilton App. No. C-790028, unreported.

---

[4] R.C. 2901.21 reads in full as follows:

"(A)   Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:

"(1)   His liability is based on conduct which includes either a voluntary act, or an omission to perform an act or duty which he is capable of performing;

"(2)   He has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.

"(B)   When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

"(C)   As used in this section:

"(1)   Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession.

"(2)   Reflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts.

"(3)   'Culpability' means purpose, knowledge, recklessness, or negligence, as defined in section 2901.22 of the Revised Code."

[5] It is a widely accepted fact that a major portion of the 40,000 to 50,000 traffic deaths each year are caused by drivers who have been drinking. A motor vehicle has been held to be a "deadly weapon" capable of inflicting death when so used. *State* v. *Orlett* (M.C. 1975), 44 Ohio Misc. 7 [73 O.O.2d 30]; *State* v. *Leidecker* (April 12, 1981), Hamilton App. No. C-800689, unreported; *State* v. *Stangill* (May 17, 1978), Hamilton App. No. C-77450, unreported.

The act of driving a vehicle while under the influence of alcohol (or drugs, or a combination of both) is a voluntary act in the eyes of the law, and the duty to refrain from doing so is one that in the interests of public safety must be enforced by strict criminal liability without the necessity of proving a culpable state of mind.

The fourth assignment of error has no merit.

## III

Appellant contends that she can not be held liable for any offense because at the time of the offense she was dissociated from her primary personality (Robin) and in the state of consciousness of a secondary personality (Jennifer). She contends that she was not acting either consciously or voluntarily. R.C. 2901.21[6] provides, in effect, that a person who acts unconsciously and without volition, acts involuntarily and cannot be guilty of any offense.

Appellant's contention is based on expert psychiatric testimony that was not controverted and appears to have been conceded by the prosecution. She was diagnosed as having a multiple personality disorder, meeting the following criteria: (1) she is dominated from time to time by two or more separate personalities; (2) the personality who is "in consciousness," or dominant, at any particular time controls her behavior; (3) the transition from one personality to another is involuntary, sudden, and generally without warning; and (4) each personality has unique characteristics, including behavior patterns, memories and social associations. She further maintains that on the day in question, psychological trauma (report of a lump on her breast) caused her to dissociate into the personality of Jennifer, who is impulsive, angry, fearful and anxious. Jennifer has a drinking problem. Finally, appellant contends

that when she is Jennifer, Robin is unaware of what is going on, has no control over Jennifer's actions, and no memory of what Jennifer did later on when she is restored to the primary personality of Robin.

The treatment for this disorder has been psychotherapy during which the completeness of dissociation, originally caused by trauma and maintained as a means of blocking that trauma and succeeding traumas, is reduced so that the personalities become integrated into one. Appellant has been in psychotherapy since June 1977, and argues that incarceration will have a devastating effect on her progress.

Appellant submits that on this evidence, it was error to hold her legally responsible because being Jennifer on the day in question, Robin was not conscious of what was happening and lacked voluntary control over Jennifer's actions. This is not an insanity defense but a claim that appellant cannot be found guilty because during the commission of the offense, her acts were beyond the control of her primary personality and were therefore involuntary.

We disagree. Assuming *arguendo* that the evidence was sufficient to establish such a complete break between appellant's consciousness as Robin and her consciousness as Jennifer that Jennifer alone was in control (despite years of therapy), nevertheless the evidence fails to establish the fact that Jennifer was either unconscious or acting involuntarily. There was only one person driving the car and only one person accused of drunken driving. It is immaterial whether she was in one state of consciousness or another, so long as in the personality then controlling her behavior, she was conscious and her actions were a product of her own volition. The evidence failed to demonstrate that Jennifer was unconscious or otherwise acting involuntarily.

Another branch of appellant's argument is that since Robin has only minimal

---

[6] R.C. 2901.21 is set forth in fn. 4 above.

recollection of what Jennifer did and was unable to respond to questions on the stand about the conduct constituting the offense, Robin was not conscious of that conduct and should not be held responsible for it. We are not persuaded. If we were to allow the bare existence of a defendant's multiple personality disorder to excuse criminal behavior, we would also relieve from responsibility for their criminal acts all defendants whose memories are blocked. We do not believe that is the legislative intent of R.C. 2901.21.

We find no merit in the second assignment of error.

## IV

Carrying the disabilities of a multiple personality disorder a step further, appellant argues in the third assignment that the court erred in finding that she failed to establish her defense of insanity,[7] because the uncontroverted evidence was that her primary personality (Robin) was not conscious of the wrongfulness of the secondary personality's (Jennifer's) acts and did not have the ability to cause that personality to refrain from driving while drunk. We find no merit in this claim. The evidence fails to establish by a preponderance that Ms. Grimsley's mental disorder had so impaired her reason that she, as Robin or as Jennifer or as both, either did not know that her drunken driving was wrong or did not have the ability to refrain from driving while drunk. *State* v. *Staten* (1969), 18 Ohio St. 2d 13 [47 O.O.2d 82]. We find no merit in the third assignment of error.

Because appellant was erroneously denied a jury trial, we reverse the judgment below and remand this case for further proceedings.

*Judgment reversed and case remanded.*

PALMER and KEEFE, JJ., concur.

---

[7] No objection was made to the appellant's use of the defense of insanity against an offense of strict criminal liability when it was not necessary to prove a culpable state of mind, and the prosecution did not raise the question on appeal. We do not reach the question, technically, but we note that the incapacity to know the wrongfulness of one's conduct requires only proof that the accused lacked the mental capacity to know that the act was wrongful, whether or not culpability was required for guilt, and that the incapacity to conform one's conduct to the requirements of law is equivalent to involuntariness. This suggests that the insanity defense is applicable against an offense of strict criminal liability.