The STATE of Ohio, Appellee,

v.

KEETON, Appellant.

[Cite as *State v. Keeton* (1991), 74 Ohio App.3d 817.]

Court of Appeals of Ohio,
Jackson County.

No. 655.

Decided July 19, 1991.

*Mark Ochsenbein,* Prosecuting Attorney, for appellee.

*Mark T. Musick,* for appellant.

HÁRSHA, Judge.

This is an appeal from a judgment of conviction and sentence entered upon a guilty verdict by the Jackson County Municipal Court. A jury found Gerald J. Keeton, defendant below and appellant herein, guilty of operating a vehicle while under the influence of alcohol (R.C. 4511.19[A][1]), operating a vehicle with a prohibited breath alcohol content (R.C. 4511.19[A][3]), and operating a vehicle while having no operator's license (R.C. 4507.02). On the conviction for violating R.C. 4511.19(A)(1), appellant was sentenced to serve one hundred eighty days in jail, to pay a $500 fine and to pay court costs. On the conviction for violating R.C. 4507.02, appellant was sentenced to serve one hundred eighty days in jail and to pay court costs. These sentences were ordered to run consecutively; however, one hundred twenty days of the second sentence was suspended pending completion of five years non-reporting probation by appellant. No sentence was imposed upon the R.C. 4511.-19(A)(3) conviction.

Appellant asserts the following as his sole assignment of error:

"The trial court erred by excluding evidence of the defendant-appellant's wife not having a valid operator's license as not relevant and in so doing denied defendant his right to a fair trial."

Appellant was charged in three separate complaints, in the form of uniform traffic tickets, with the violations for which he was ultimately convicted. The complaints alleged that on May 20, 1990, appellant operated a black 1974 Ford pickup upon County Road 28 in Jackson Township, Jackson County, Ohio. They further alleged that at that time, he was under the influence of alcohol, had a blood alcohol content of .17 grams per two hundred ten liters of his breath and did not have an operator's license. Appellant pled "not guilty," engaged in discovery and proceeded to trial before the jury. At trial, appellant stipulated that he did not possess a valid operator's license, that he was under the influence of alcohol at the time in question, and that he had a blood alcohol content above the legal limit. Appellant's defense was that his wife, rather than he, was the operator of the vehicle. The jury returned guilty verdicts on all three charges.

The trial of this matter was held on October 16, 1990. At the trial, in addition to the previously mentioned stipulations, the following pertinent evidence was adduced. On May 20, 1990, State Trooper Charles Chapman was dispatched to a location on County Road 28 in Jackson County, where a vehicle was reportedly in a ditch. Upon arriving at the location, he saw a farm tractor with a chain attached to a black pickup truck. Appellant was exiting the driver's door of the truck and a female and child were on the passenger's

side. The tractor driver indicated that he had just pulled the truck from the ditch. Appellant identified the female as being his wife. The trooper noticed the odor of alcohol about appellant. Appellant told the trooper that he had been driving the pickup. However, the trooper did not witness this himself. The trooper did not believe appellant's wife had been drinking.

The driver of the tractor testified that when he arrived at the scene, both appellant and appellant's wife were outside the truck. He also testified that appellant steered the truck while he pulled it out of the ditch with the tractor. Appellant also steered the truck as the tractor was pulling it down the road.

The defense first called Krista Keeton, appellant's wife. She testified that she was driving the truck when it went into the ditch, and that she knew she could be charged with driving without a license. When appellant's counsel attempted to clarify this by asking if Mrs. Keeton had an operator's license on May 20, 1990, the prosecuting attorney objected upon the basis that the question was irrelevant. The court sustained the objection in the following manner:

"Its [sic] sustained because its [sic] irrelevant. I don't see what difference it makes whether she has or she doesn't have a drivers licenses [sic]. Shes ·[sic] not charged with anything."

Mrs. Keeton then testified that she had not identified herself as the driver at the time because she was pregnant and her "nerves were shot." She stated that she was driving because she had not been drinking.

Appellant testified that his wife was driving when the truck went into the ditch. At the time, appellant told the trooper that he was driving in order to protect his wife as she did not have an operator's license. Appellant admitted, on the stand, that he sat in the driver's seat and steered the truck while it was being pulled by the tractor. On cross-examination, appellant stated that he had lied to the trooper when he told the trooper that he, rather than Mrs. Keeton, was driving when the truck went into the ditch.

After appellant testified, the defense rested and closing arguments were heard. During the course of the state's closing and rebuttal arguments, the prosecutor told the jury that the case came down to a question of appellant's credibility. They would have to determine whether appellant was lying to the trooper immediately after the accident, or whether appellant was lying on the stand. The prosecutor also told the jury to consider who had something to gain or lose by lying. Appellant's counsel objected to this argument. The objection was, in essence, that as Mrs. Keeton's testimony regarding appellant's motive for lying to the trooper had been excluded as irrelevant, it was now unfair for the state to suggest that appellant's motive was something else entirely. Appellant asked for a mistrial. The court overruled the

objection and the state concluded its argument. The jury was given its instructions. They deliberated and returned the guilty verdicts.

Appellant's assignment of error asserts that the trial court improperly excluded Mrs. Keeton's testimony that she did not have an operator's license. Appellant contends that on May 20, 1990, his wife drove their truck into the ditch. She did not have an operator's license. Therefore, appellant contends he lied to the trooper in order to shield his wife from being charged with driving without a license. He claims, however, his defense went awry when the court excluded as irrelevant, the evidence that his wife had no license.

■ Evid.R. 402 generally deems all relevant evidence to be admissible unless otherwise provided by law. Evid.R. 401 states:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The fact that appellant was lying at the scene when he told the officer he was the driver was a fact "of consequence to the determination of the action." The fact that appellant's wife had no operator's license made it "more probable" that appellant was lying at the scene. Accordingly, Mrs. Keeton's testimony that she had no operator's license should not have been excluded solely upon the basis of relevancy. Although such exclusion by the trial court was error, we will not reverse the judgment as we find the error to have been harmless.

■ Appellant's defense at trial and assignment of error on appeal are based on the allegation that it was his wife who drove the vehicle *into* the ditch. However, because we find overwhelming evidence that appellant violated R.C. 4511.19(A) *after* the vehicle was driven into the ditch, we find the error committed by the trial court to be harmless. Even if the jury believed Mrs. Keeton had driven the truck into the ditch, there was overwhelming evidence upon which to base Mr. Keeton's conviction.

■ The only issue left to be resolved after appellant entered his stipulations was *whether he operated a vehicle* during the period that he was under the influence of alcohol. For the purposes of R.C. 4511.19(A), the term "operate" is not synonymous with the term "drive." In *State v. Cleary* (1986), 22 Ohio St.3d 198, 22 OBR 351, 490 N.E.2d 574, paragraph one of the syllabus, the Ohio Supreme Court held:

"Operation of a motor vehicle within the contemplation of R.C. 4511.19(A) is a broader term than driving and a person in the driver's position in the front seat of the vehicle with the key in the ignition while under the influence of alcohol or any drug of abuse can be found in violation of the statute."

The court in *Cleary* also agreed with the statement of legislative purpose found in *State v. Grimsley* (1982), 3 Ohio App.3d 265, 3 OBR 308, 444 N.E.2d 1071, wherein the Court of Appeals for Hamilton County stated:

"We hold that R.C. 4511.19 imposes strict criminal liability. We find in the language chosen by the legislature a plainly indicated purpose to do so, *because the overall design of the statute is to protect against the hazards to life, limb and property created by drivers who have consumed so much alcohol that their faculties are impaired.*" (Emphasis added.) *Id.* at 267, 3 OBR at 311, 444 N.E.2d at 1074. See, also, *Cleary, supra,* 22 Ohio St.3d at 199, 22 OBR at 351, 490 N.E.2d at 574.

Appellant in this case admitted that after the vehicle was put into the ditch, he sat in the driver's seat and steered the truck out of the ditch and down the road.[1] The keys to the truck were in the ignition, although it appears the vehicle did not have the engine running. The truck was being towed by a tractor using a chain. In light of the legislative purpose "to protect against the hazards to life, limb and property," we must hold that this conduct by appellant constituted the operation of a vehicle as the term "operate" is used in R.C. 4511.19(A) and defined in *Cleary, supra.* It is not for us to say that the jury did not reach the same conclusion below.

During appellant's cross-examination of the driver of the tractor who pulled appellant from the ditch, the following exchange occurred:

"Q. What did you mean by the phrase, guided along?

---

1. The following exchange took place during the direct examination of appellant:
   "Q. Okay do you remember, Mr. Keeton, being in a position to steer the truck, for Mr. Hill when he pulled [you] out with his tractor?
   "A. Yes.
   "Q. Okay, now where [*sic*] you in the truck steering?
   "A. Yeah I was setting [*sic*] behind the steering wheel, steering it out of the ditch.
   "Q. Okay, did you walk along the side of the truck and steer?
   "A. No.
   "Q. Just inside the truck?
   "A. Yes.
   "Q. Okay, now at anytime did you start the truck?
   "A. No."
   During cross-examination, the state expounded upon appellant's actions:
   "Q. Okay, Mr. Keeton, let me see if I've got this correct. At the time that Mr. Hill pulled this vehicle out of the ditch, you were steering it, is that correct?
   "A. Yes, I was steering it up out of the ditch.
   "Q. Okay and then once he pulled it upon the road you were steering it as he pulled it down the road, is that correct?
   "A. There for a short distances, yeah.
   "Q. Okay, so you were behind the wheel of this vehicle? And you were also steering it, is that correct?
   "A. Yes."

"A. Well you got * * * when your pulling with chain, say a ten foot chain, if you don't have somebody working the steering wheel, naturally its [*sic*] going to go right back in the ditch or across the line or something like this. You've got to steer it to keep it manuveering [*sic*] in the road.

"Q. So its [*sic*] just practice of good sense?

"A. Yes.

"Q. Thats [*sic*] all the questions I have.

"BY THE COURT: Redirect.

" * * *

"Q. [On redirect] Okay, have you towed vehicles with chains before?

"A. Yes.

"Q. Okay, when you live in the country most people have done that.

"A. Yes.

"Q. Okay, have you ever tried to tow another car or truck with a chain where there wasn't somebody behind the wheel?

"A. No, cause I know you can't do that.

"Q. Okay, what happens when you try to do that?

"A. Well you might start down the road and go right back in the ditch or go across the road or run up against the tractor. You've got to have somebody to control it."

The legislature, in enacting R.C. 4511.19(A), cannot have intended to allow an individual under the influence of alcohol to control a vehicle that is being towed. The testimony quoted above indicates that such a person is necessary to prevent the towed vehicle from crossing the center line, entering the ditch and/or colliding with the lead vehicle. Considering the legislature's intention to protect life, limb and property, it did not intend that the responsibility of controlling a towed vehicle be placed with one under the influence of alcohol. Accordingly, under the facts of this case, appellant did "operate" the truck when he steered it from the ditch and down the road during the towing operation.

The appellant, by his own admissions and stipulations, provided overwhelming evidence that he violated R.C. 4511.19(A)(1) and (3). Assuming that if the jury in this case would have found that appellant did not drive the truck into the ditch had the court admitted the testimony concerning his wife's lack of a license, the uncontroverted evidence was clear that he operated the truck when it was removed from the ditch. Thus, any possible error in excluding evidence supporting appellant's contention that he did not drive the truck into

the ditch was harmless. Appellant's sole assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON, P.J., concurs separately.

GREY, J., dissents.

STEPHENSON, Presiding Judge, concurring.

I concur in the judgment and opinion. I would additionally observe that in other jurisdictions, courts which have addressed cases involving facts similar to those in the case at bar have held that steering a pushed or towed vehicle constitutes a violation. See *State v. Dean* (1987), 84 Ore.App. 108, 733 P.2d 105; *Hester v. State* (1954), 196 Tenn. 680, 270 S.W.2d 321; *Commonwealth v. Riehl* (1935), 23 Pa.D. & C. 110.