[Cite as *State v. Dumas*, 2011-Ohio-2926.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95760**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARLENE DUMAS

DEFENDANT-APPELLANT

**JUDGMENT:**
**DISMISSED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-524605

**BEFORE:** Rocco, J., Jones, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** June 16, 2011

**ATTORNEY FOR APPELLANT**

Reuben J. Sheperd
11510 Buckeye Road
Cleveland, Ohio   44104


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Carl Sullivan
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113


KENNETH A. ROCCO, J.:

{¶ 1} Defendant-appellant Marlene Dumas appeals from her convictions for felonious assault and driving under the influence of alcohol ("DUI").

{¶ 2} Dumas argues her convictions are against the manifest weight of the evidence. She contends she proved her defense of not guilty by reason of insanity ("NGRI"). Upon a review of the record, this court is compelled to dismiss this case for lack of jurisdiction.

{¶ 3} The events surrounding Dumas's convictions are not disputed. According to the witnesses to the incident, on the afternoon of February 24, 2009, the Cleveland police received reports of a female motorist, who was later identified as Dumas, driving her vehicle in an erratic and dangerous manner on Interstate 90 in the westbound direction.

{¶ 4} One of those callers was the victim, Christina Rokakis. As Rokakis proceeded along the West Shoreway, she observed Dumas scattering construction barrels, striking the concrete barrier along the median of the highway, and driving on only the rim of what should have been one of the front tires.

{¶ 5} Although Rokakis increased her speed in order to outdistance Dumas, she was forced to stop for the traffic signal at the intersection at which the highway became Clifton Boulevard. Dumas, however, did not. Instead, she ran into Rokakis's rear bumper, pushing Rokakis's car forward. Rokakis called the police again.

{¶ 6} Dumas then reversed her vehicle and proceeded to "ram" Rokakis's car. Dumas repeated this activity three more times, causing Rokakis's car to enter into the middle of the busy intersection.

{¶ 7} At that point, Dumas got out of her vehicle and approached Rokakis. She stated to Rokakis that "God told her to hit the car to keep her

momentum going." Dumas smelled of alcohol. While Dumas conversed with Rokakis, a bystander went over to Dumas's vehicle and removed the keys from the ignition.

{¶ 8} By the time the police arrived at the scene, Dumas had returned to her vehicle. Officer Patrick Becka noticed the odor, along with a bottle of brandy and a paper cup with liquor in it in the cupholder. Dumas had difficulty obtaining her driver's license from her purse, her speech was slurred and barely coherent, and she seemed "happy."

{¶ 9} Dumas failed the sobriety tests Becka administered. Becka testified that Dumas admitted she had purchased the brandy and had been drinking it in her vehicle. She refused, however, to take a Breathalyzer test. Later, Dumas telephoned her adult daughter from the police station and explained to her that the movie director wanted her to ram the car.

{¶ 10} Dumas subsequently was indicted on five counts, charged with two counts of felonious assault, two counts of aggravated vehicular assault, and DUI. She originally entered a plea of not guilty to the charges.

{¶ 11} The record reflects the trial court referred Dumas to the court's psychiatric clinic for evaluations on three separate occasions. Although she was found competent to stand trial, questions remained concerning her sanity at the time of the incident. Dumas eventually changed her plea to NGRI.

The trial court thereafter further permitted Dumas to be evaluated by an independent psychiatrist.

{¶ 12} The psychiatric reports all indicated Dumas suffered from the psychotic disorder labeled "Disassociative Identity Disorder," formerly known as "Multiple Personality Disorder."[1]  Dumas had at least seven different personalities.

{¶ 13} Dumas's case eventually proceeded to a trial to the bench.  After hearing the evidence, the trial court granted her motion for acquittal as to three of the counts, but found her guilty of one count of felonious assault and one count of DUI.  The trial court sentenced Dumas to one year of conditional community control, suspended her driver's license for five years, and imposed a one-thousand dollar fine.

{¶ 14} Although Dumas argues that her convictions are against the manifest weight of the evidence, this court cannot address the merits of this appeal, because this court lacks jurisdiction to do so.  The order of sentence issued does not constitute a final appealable order.

---

[1]The prosecution's expert witness testified she could not render an opinion as to whether Dumas understood the wrongfulness of her actions at the time of the incident.  Dumas's expert witness, on the other hand, testified to a reasonable degree of medical certainty that Dumas did not.

{¶ 15} This court is compelled to dismiss on the authority of *State v. Baker*, 119 Ohio St.3d 197, 893 N.E.2d 163, 2008-Ohio-3330, and R.C. 2929.19(B)(5), [2] and *State v. Waters*, Cuyahoga App. No. 85691, 2005-Ohio-5137, which was cited by both the majority and the dissent in *State v. Whitfield*, 124 Ohio St.3d 319, 922 N.E.2d 182, 2010-Ohio-2. The trial court in this case not only imposed a single term of community control for both of Dumas's convictions, but indicated no potential sanction for either offense should she fail to comply with community control requirements.

{¶ 16} The facts in *State v. Pierce*, Cuyahoga App. No. 92922, 2010-Ohio-5467, appeal not allowed, *State v. Pierce*, 128 Ohio St.3d 1427, 2011-Ohio-1049, 943 N.E.2d 573, and other cases that the supreme court has reversed[3] are distinguishable because, by the time those were on appeal, the

---

[2]That section provides, in relevant part: "If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed * * *, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and *shall indicate the specific prison term that may be imposed as a sanction for the violation*, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code." (Emphasis added.)

[3] See, e.g., *State v. South*, 120 Ohio St.3d 358, 2008-Ohio-6693, 899 N.E.2d 146; *State v. Goldsberry*, 120 Ohio St.3d 275, 2008-Ohio-6103, 898 N.E.2d 46.

defendant had violated community control and received a prison term that had not, in some cases, originally been pronounced.

**{¶ 17}** In light of the foregoing, Dumas's appeal is dismissed.

It is ordered that appellee recover from appellant costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

LARRY A. JONES, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR