[Cite as *State v. Dumas*, 2012-Ohio-91.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97076**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARLENE DUMAS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-524605

**BEFORE:**  Celebrezze, J., Blackmon, A.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**  January 12, 2012

**ATTORNEY FOR APPELLANT**

Reuben J. Sheperd
11510 Buckeye Road
Cleveland, Ohio   44104


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Carl Sullivan
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113




FRANK D. CELEBREZZE, JR., J.:

{¶ 1}  Appellant, Marlene Dumas, appeals from her convictions for felonious assault and driving while under the influence of alcohol or drugs ("DUI") claiming she was not guilty by reason of insanity ("NGRI").  She claims that she was not responsible for her actions when she repeatedly rammed her car into another vehicle stopped at a traffic light, and a contrary finding is against the manifest weight of the evidence.  After a review of the record, we affirm.

{¶ 2}  This court has previously recited the history of this case in *State v. Dumas*, 8th Dist. No. 95760, 2011-Ohio-2926, ¶ 3-13 ("*Dumas I*"):

The events surrounding Dumas's convictions are not disputed. According to the witnesses to the incident, on the afternoon of February 24, 2009, the Cleveland police received reports of a female motorist, who was later identified as Dumas, driving her vehicle in an erratic and dangerous manner on Interstate 90 in the westbound direction.

One of those callers was the victim, Christina Rokakis. As Rokakis proceeded along the West Shoreway, she observed Dumas scattering construction barrels, striking the concrete barrier along the median of the highway, and driving on only the rim of what should have been one of the front tires.

Although Rokakis increased her speed in order to outdistance Dumas, she was forced to stop for the traffic signal at the intersection at which the highway became Clifton Boulevard. Dumas, however, did not. Instead, she ran into Rokakis's rear bumper, pushing Rokakis's car forward. Rokakis called the police again.

Dumas then reversed her vehicle and proceeded to "ram" Rokakis's car. Dumas repeated this activity three more times, causing Rokakis's car to enter into the middle of the busy intersection.

At that point, Dumas got out of her vehicle and approached Rokakis. She stated to Rokakis that "God told her to hit the car to keep her momentum going." Dumas smelled of alcohol. While Dumas conversed

with Rokakis, a bystander went over to Dumas's vehicle and removed the keys from the ignition.

By the time the police arrived at the scene, Dumas had returned to her vehicle. Officer Patrick Becka noticed the odor, along with a bottle of brandy and a paper cup with liquor in it in the cup holder. Dumas had difficulty obtaining her driver's license from her purse, her speech was slurred and barely coherent, and she seemed "happy."

Dumas failed the sobriety tests Becka administered. Becka testified that Dumas admitted she had purchased the brandy and had been drinking it in her vehicle. She refused, however, to take a Breathalyzer test. Later, Dumas telephoned her adult daughter from the police station and explained to her that the movie director wanted her to ram the car.

Dumas subsequently was indicted on five counts, charged with two counts of felonious assault, two counts of aggravated vehicular assault, and DUI. She originally entered a plea of not guilty to the charges.

The record reflects the trial court referred Dumas to the court's psychiatric clinic for evaluations on three separate occasions. Although she was found competent to stand trial, questions remained concerning her sanity at the time of the incident. Dumas eventually changed her plea to NGRI. The trial court thereafter further permitted Dumas to be evaluated by an independent psychiatrist.

The psychiatric reports all indicated Dumas suffered from the psychotic disorder labeled "Disassociative Identity Disorder," [("DID")] formerly known as "Multiple Personality Disorder."[1] Dumas had at least seven different personalities.

Dumas's case eventually proceeded to a trial to the bench. After hearing the evidence, the trial court granted her motion for acquittal as to three of the counts, but found her guilty of one count of felonious assault and one count of DUI. The trial court sentenced Dumas to one year of conditional community control, suspended her driver's license for five years, and imposed a one-thousand dollar fine.

**{¶ 3}** Dumas then timely filed an appeal, which was dismissed due to the trial court's failure to issue a *Baker* compliant sentencing entry. See *Dumas I*; *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163. After the trial court corrected this issue, Dumas filed the instant appeal, assigning one error.

---

[1] "The prosecution's expert witness testified she could not render an opinion as to whether Dumas understood the wrongfulness of her actions at the time of the incident. Dumas's expert witness, on the other hand, testified to a reasonable degree of medical certainty that Dumas did not."

## Law and Analysis

**{¶ 4}** Dumas's single assignment of error states, "[t]he trial court's finding that appellant was 'guilty' rather than 'not guilty by reason of insanity' was against the manifest weight of the evidence." Dumas argues the reports and testimony of the expert witnesses demonstrate that she was not responsible for her actions on February 24, 2009.

**{¶ 5}** A claim that a conviction is against the manifest weight of the evidence "addresses the evidence's effect of inducing belief. [*State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541.] In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. This court sits as the "thirteenth juror" and, reviewing the entire record, engages in a weighing of the evidence "and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 6}** The elements of felonious assault and driving under the influence of drugs or alcohol are not at issue here, except for the necessary culpable mental state. The question is whether the evidence established that Dumas lacked the necessary criminal state of mind due to a severe mental condition at the time the incident occurred.

{¶ 7} "Generally, an offense will be defined in terms of a prohibited act accompanied by a culpable mental state, the 'mens rea' or guilty mind. R.C. 2901.21 sets forth the basic requirements for criminal liability." *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, ¶ 9-11. The statute provides:

> (A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:
>
> (1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;
>
> (2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.
>
> * * *
>
> (C) Voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense * * *.

{¶ 8} Further, a "plea of not guilty by reason of insanity is an affirmative defense, *State v. Humphries* (1977), 51 Ohio St.2d 95, 364 N.E.2d 1354, paragraph one of the syllabus[,] which must be proved by a preponderance of the evidence, R.C. 2901.05(A)." *State v. Brown*, 5 Ohio St.3d 133, 134, 449 N.E.2d 449 (1983).

**{¶ 9}** "The burden is upon the defendant to prove that, because of mental illness at the time he committed the crime, he was unable to distinguish between right and wrong or was unable to control himself to avoid committing the criminal act." *State v. Hicks*, 10th Dist. No. 82AP-27, 1982 WL 4220, *6 (June 10, 1982).

**{¶ 10}** The trial court found:

> Here [Dumas] and all of her alters knew it was very dangerous to drink and drive. She admitted that. * * * She also admitted in the doctor's report that she and her alters would have known it was wrong to hit a car containing another person.
>
> Additionally, Miss Dumas indicated [in] the doctor's report that her twin alter told her, "I did it." So the defendant had awareness and memory of the incident. (Tr. 353.)

The trial court also found that "voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense[,]" according to R.C. 2901.21(C). (Tr. 352.)

**{¶ 11}** Dr. Cathleen Cerny testified that whether Dumas possessed the necessary mental state was a question of fact dependent upon the extent of Dumas's intoxication. The trial court found that Dumas remembered voluntarily drinking alcohol on February 24, 2009, while on psychiatric medication, which led to the incident. Examining the evidence as the trial court did, we reach the same conclusion that appellant voluntarily ingested alcohol and drove her car that day.

{¶ 12} The testifying police officer, Officer Patrick Becka, and the victim, Christina Rokakis, testified that Dumas appeared intoxicated and smelled of alcohol. The officer testified that Dumas failed field sobriety tests and refused to take a breathalyzer test. Based on this evidence, the finder of fact could conclude that Dumas was intoxicated at the time of the incident.

{¶ 13} Dumas knew that mixing alcohol with her psychiatric medication could cause her alternate personalities to manifest, yet she chose to do just that on the day in question. Further, Dumas's twin sister personality was apparently responsible at the time of the incident, meaning she, too, understood the wrongfulness at the time.

{¶ 14} Dr. Jacobs testified that it was not in Dumas's normal state to have a bottle of liquor in a car, and in her typical state she would not open that bottle and drink. Except, that is exactly what occurred in this case. Dr. Jacobs opined that because it was uncharacteristic for Dumas to drink and drive, she must not have been in control. However, as the trial court noted, Dumas remembered drinking a quantity of alcohol in the car after her therapy appointment that day. This casts some doubt on the weight to be given to Dr. Jacobs's conclusion that Dumas would not drink and drive, and therefore an alternate personality must have been in control during the incident. One of the characteristics of DID is periods of "lost time" because the person does not remember events that take place when an alternate personality is in control. Because Dumas remembers drinking brandy while in her car, she was likely in control when she made that decision.

**{¶ 15}** This finding is also in line with a case from the First District, *State v. Grimsley*, 3 Ohio App.3d 265, 444 N.E.2d 1071 (1st Dist.1982). In that case involving a person with DID who was tried for driving while intoxicated, the court upheld the conviction reasoning:

> Assuming *arguendo* that the evidence was sufficient to establish such a complete break between appellant's consciousness as Robin and her consciousness as Jennifer that Jennifer alone was in control (despite years of therapy), nevertheless the evidence fails to establish the fact that Jennifer was either unconscious or acting involuntarily. There was only one person driving the car and only one person accused of drunken driving. It is immaterial whether she was in one state of consciousness or another, so long as in the personality then controlling her behavior, she was conscious and her actions were a product of her own volition. The evidence failed to demonstrate that Jennifer was unconscious or otherwise acting involuntarily. Id. at 268.

**{¶ 16}** Here, the trial court found that Dumas stated the personality in control at the time of the incident was her twin sister persona. This demonstrates that, even if this alternate personality was in control, that personality was capable of understanding the wrongfulness of her actions, even if she was drunk at the time because voluntary intoxication is not a valid defense.

**{¶ 17}** Based on the evidence present in this case, we cannot say that the trial court lost its way in convicting Dumas of felonious assault and driving under the influence of drugs and alcohol.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA A. BLACKMON, A.J., and
KENNETH A. ROCCO, J., CONCUR