THE STATE OF OHIO, APPELLEE, v. CLEARY, APPELLANT.

[Cite as State v. Cleary (1986), 22 Ohio St. 3d 198.]

(No. 85-221—Decided March 12, 1986.)

Richard A. Castellini, city solicitor, Paul J. Gorman, city prosecutor, and Rodney Prince, for appellee.

Cissell, Smith, Farrish & Stancen Co., L.P.A., and James C. Cissell, for appellant.

CORRIGAN, J. On November 12, 1983, after working approximately fifteen hours, the appellant parked his automobile in the parking lot of a King Kwik store in Cincinnati at approximately 10:00 p.m. and walked around the corner to McDuffie's Bar where he stayed until the bar closed at 2:30 a.m. He was found by the arresting officer at approximately 2:55 a.m. in the driver's seat of his car. The motor was running at high speed and his foot was on the accelerator. He was slumped over the steering wheel and had passed out. The car was not in gear and the emergency brake was engaged. He admitted he "sat there in an intoxicated state," but he intended to heed his lawyer's earlier advice about not driving if he "had more than two beers."

The appellant contends in the first and second propositions of law that his conviction under R.C. 4511.19 may not be sustained because he had not driven the automobile, did not intend to drive after he had been drinking,

and the automobile had remained stationary in the parking lot. In light of the language of the statute, we cannot agree with appellant's attempted rationalization and, therefore, affirm his conviction.

Initially it should be pointed out that the statute imposes strict criminal liability. We agree with the statement found in *State* v. *Grimsley* (1982), 3 Ohio App. 3d 265, at 267:

"* * * We find in the language chosen by the legislature a plainly indicated purpose to do so, because the overall design of the statute is to protect against the hazards to life, limb and property created by drivers who have consumed so much alcohol that their faculties are impaired. * * *"

The language of R.C. 2901.21(B) states that "[w]hen the section defining an offense does not specify any degree of culpability and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense."

R.C. 4511.19 provides in part:

"(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state if any of the following apply:

"(1) The person is under the influence of alcohol or any drug of abuse, or the combined influence of alcohol and any drug of abuse; * * *."

While this section deals with the prohibition against driving while under the influence and much of the literature and discussion on the subject refer to "driving," that word and "operating" are not synonymous. This statute has been reviewed and amended over the years and the General Assembly continues to adhere to the word "operate." Therefore, the prohibition contained in the statute is against "operating" a vehicle while under the influence, not merely "driving" it. The term "operating" encompasses a broader category of activities involving motor vehicles than does "driving." Many jurisdictions have found that a person may operate a vehicle even though the vehicle is not moving. Operation of a motor vehicle within contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat with the ignition key in his possession indicating either his actual or potential movement of the vehicle while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1).[1]

The question before this court is whether the conduct described in the instant case is sufficient to sustain a conviction for operating a motor vehicle while under the influence. This court in *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140 [38 O.O.2d 366], in paragraph three of the syllabus held that "* * * a charge of operating a motor vehicle while under the influence

---

[1] See Annotation, What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance (1979), 93 A.L.R. 3d 7, Section 8[a] (cases cited therein).

of intoxicating liquor may apply where a stationary vehicle is involved * * *."

Appellate courts of this state in applying that decision have adopted a broad definition of the term "operate." Such a broad definition is essential to achieve the legislative purpose of the statute, discouraging those who have consumed too much alcohol from undertaking the operation of motor vehicles. The court in *Brownfield* v. *McCullion* (1984), 20 Ohio App. 3d 197, paragraph one of the syllabus, held that "* * * a stationary vehicle is being operated within the contemplation of R.C. 4511.19 where a person is seated behind the steering wheel of the vehicle with the ignition key in the ignition and the motor running."

In *State* v. *Porto* (July 23, 1984), Washington App. No. 83 x 12, unreported, the court sustained a conviction where the driver was found leaning on the steering wheel inside a parked but running jeep. In *State* v. *Schwienher* (Jan. 26, 1983), Hamilton App. No. C-820210, unreported, a case very similar to the instant case, the driver was found in a parking lot slumped over the steering wheel, with his foot depressing the accelerator so that the engine was running at a high rate. His conviction was affirmed. We find that the foregoing cases represent the better position in view of the legislative intent of the statute.[2]

The appellant contends that this court's ruling in *Mentor* v. *Giordano*, *supra*, mandates a plain showing that the operator is in a thoroughly intoxicated state and obviously has moved or intends to move the vehicle. This is a mischaracterization of the holding in *Mentor* v. *Giordano*. In that case, we specifically stated, *"each 'drunken driving' case is to be decided on its own particular and peculiar facts."* (Emphasis *sic.*) *Id.* at 146. We decided in *Giordano* that where the driver was present behind the wheel of

---

[2] *State* v. *Lucas* (Sept. 23, 1981), Wayne App. No. 1737, unreported (driver properly convicted where he was found asleep or unconscious in a car with his head down and leaning against the driver's door in the driving lane of a roadway with motor running, the lights on, and the automatic transmission in "drive"); *State* v. *Miller* (Mar. 18, 1981), Guernsey App. No. CA 640, unreported (conviction upheld where a pickup truck was in the left-turn lane, the left-hand turn signal being in operation, the motor running and the key in the ignition, with its driver passed out behind the steering wheel). Cf. *Cincinnati* v. *Kelley* (1976), 47 Ohio St. 2d 94 [1 O.O.3d 56] (conviction for actual physical control of vehicle while intoxicated upheld where driver was in the driver's seat of vehicle, behind the steering wheel, in possession of the ignition key and in such condition that he was physically capable of starting the engine and causing it to move); *Toledo* v. *Voyles* (1984), 14 Ohio App. 3d 419 (conviction for actual physical control of vehicle while intoxicated upheld where driver was found asleep behind the steering wheel with key in the ignition); *Xenia* v. *Roundtree* (Aug. 16, 1984), Greene App. Nos. 83-CA83 and 84-CA15, unreported (driver located asleep behind the steering wheel of car in lane of travel with his foot on the brake could be convicted); *Bryan* v. *Gutierrez* (June 22, 1984), Williams App. No. WMS-84-5, unreported (driver was found in his car, parked in a parking space, his hips and legs in the driver's portion of the vehicle and his upper torso slumped over toward the passenger's side, with the motor running. The court concluded that the driver's volitional conduct had the potentiality of causing his motor vehicle to be set in motion.).

a parked car, with three other persons, one of whom stated he had done the driving, the evidence was insufficient to convict him of operating a motor vehicle while under the influence. There was no evidence that the defendant in that case operated the vehicle. Here, the appellant Cleary had entered the car, seated himself behind the wheel, put the key in the ignition and started and was racing the engine. We find appellant performed acts sufficient to constitute operation of the vehicle within the meaning of the statute.

Lastly, appellant contends that the legislative purpose is to protect users of the highways and streets from drunken drivers, and since he was not driving, he did not violate the statute. This is too narrow a reading of the intent of the statute. Under such an interpretation, regardless of the carnage and havoc caused by a drunken operator of a motor vehicle, without eyewitness testimony of his actual driving he would only face a possible intoxication charge.[3] It clearly was not the intent of the legislature to encourage intoxicated persons with impaired faculties and very questionable judgment, and with the capability of putting the vehicle in motion, to climb behind the wheel and be in a position to put the motor vehicle in motion. To quote from State v. Tanner (1984), 15 Ohio St. 3d 1, upholding the constitutionality of R.C. 4511.19(A)(2), at 6:

"* * * Drunk drivers represent a danger not only to themselves but to every citizen of this state. To aver * * * that an individual has some fundamental right to operate a dangerous instrumentality under the influence of a perception altering substance is an untenable proposition that we are compelled to reject."

A person under the influence of alcohol or any drug of abuse behind the wheel of a motor vehicle is the obvious hazard at which the statute is directed whether the vehicle is stationary or in motion.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and DOUGLAS, JJ., concur.

HOLMES and WRIGHT, JJ., concur in judgment only.

CORRIGAN, J., of the Eighth Appellate District, sitting for C. BROWN, J.

---

[3] Legislative bodies are dealing with a problem of epidemic proportions. According to the National Highway Traffic Safety Administration ("NHTSA"), approximately fifty thousand people die annually in motor vehicle accidents and twenty-six thousand of these fatalities involve the drinking driver.