**State v. McGlone**
**Case No. CA89-05-032**

**Clermont County, (12th)**
**Decided January 29, 1990**
[Cite as 1 AOA 445]

*Donald W. White, Clermont County Prosecuting Attorney, Timothy E. Schneider, 123 N. Third Street, Batavia, Ohio 45103, for plaintiff-appellant.*

*T. David Burgess, 110 N. Third Street, Williamsburg, Ohio 45176-1322, for defendant-appellee.*

JONES, P.J.
The state appeals from a dismissal in the Clermont County Court of one count each of driving under the influence of alcohol and driving without an operator's license. The charges were brought against defendant-appellee, Allen R. McGlone, as a result of events occurring January 21, 1989. Appellee filed a motion to dismiss after a pretrial hearing on the charges. The trial court granted the motion in its entry April 25, 1989.

The facts giving rise to this matter are unique. Judith Jones, of 3553 Starling Road in Bethel, Ohio, testified that she awoke at 1:31 a.m. on January 21, 1989, to the sound of gravel crunching on her driveway and an engine running. She arose, put the cat out, and went back to bed. Her husband, Timothy Jones, testified that when he got up at 3:30 a.m. to get ready for work, he too heard the engine running and went outside to investigate. He saw a car with its motor running which was parked in his driveway. Appellee was sitting behind the wheel, sleeping.

Jones then called 911 to report the vehicle and Officer Vance Summerlin of the Clermont County Sheriff's Department was dispatched to the scene.

Officer Summerlin testified he arrived at the Jones' residence at about 4:20 a.m., checked the vehicle registration plate and examined the interior of the vehicle with a flashlight before knocking on the window to get appellee's attention. The officer noticed there was frost on

the gravel driveway but that no tire tracks were behind the vehicle to indicate it had recently arrived. Officer Summerlin also noted a frozen puddle of urine next to the driver's side of the vehicle.

The officer was able to awaken appellee, whom he noticed was sweating from the heat inside the vehicle. He testified that appellee appeared disoriented and smelled of alcohol. Officer Summerlin then conducted a field sobriety test which appellee performed poorly. Placing appellee under arrest, he took appellee to an Ohio State Highway Patrol station where, at 5:20 a.m., a BAC Verifier test was administered. Appellee failed the test and was subsequently charged with violating R.C. 4511.19, operating a motor vehicle while under the influence of alcohol, and with violating R.C. 4507.02(A), driving without a license.

Appellee moved to dismiss the charges on the grounds that the officer had not witnessed him driving the automobile and that, in fact, the evidence clearly indicated he had not driven the car for some three hours. The trial court agreed with appellee's assertion and granted the motion to dismiss.

The state then filed the instant appeal, raising the following assignments of error:

First assignment of Error
"The trial court erred when it dismissed the charge of operating a motor vehicle while under the influence of alcohol which was pending against appellee."

Second Assignment of Error
"The trial court erred as a matter of law in finding that Deputy Summerlin lacked probable cause to arrest the appellee."

R.C. 4511.19 provides, in part:

"(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:
"(1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse[.]"

At issue in the case at bar is the meaning of the word "operates" as it pertains to the act of sitting in a parked, but running, car. Appellant cites numerous cases holding that a vehicle need not be moving in order for its occupant to be "operating" it for purposes of R.C. 4511.19. In *State* v. *Cleary* (1986), 22 Ohio St. 3d 198, the supreme court found defendant's DUI conviction was proper where the following facts were present:

"[Defendant] parked his automobile in the parking lot of a King Kwik store in Cincinnati at approximately 10:00 p.m. and walked around the corner to McDuffie's Bar where he stayed until the bar closed at 2:30 a.m. He was found by the arresting officer at approximately 2:55 a.m. in the driver's seat of his car. The motor was running at high speed and his foot was on the accelerator. He was slumped over the steering wheel and had passed out. The car was not in gear and the emergency brake was engaged. He admitted he 'sat there in an intoxicated state,' but he intended to heed his lawyer's earlier advice about not driving if he 'had more than two beers.'"

The syllabi in *Cleary* read as follows:

"1. Operation of a motor vehicle within the contemplation of R.C. 4511.19(A) is a broader term than driving and a person in the driver's position in the front seat of the vehicle with the key in the ignition while under the influence of alcohol or any drug of abuse *can* be found in violation of the statute.
"2. *Entering* a motor vehicle, putting the key in the ignition and starting and engaging the engine in a stationary position are sufficient acts to constitute operation within the meaning of R.C. 4511.19(A)(1)." (Emphasis added.)

*Cleary* is distinguishable from the facts in the case at bar. Clearly *entered* his automobile while obviously intoxicated. It is entirely possible appellee *entered* his vehicle at a time when he was not yet under the influence of alcohol. It is also entirely possible that he had consumed enough alcohol before entering his vehicle that it "hit" him while he was driving home. If such occurred, he should not be penalized for getting off the highway. Finally, it is also possible that appellee simply became sleepy, pulled off the road, and then drank and became intoxicated.

The Ohio Supreme Court held in *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140, 146, that "each 'drunken driving' case is to be decided on its own particular and peculiar facts." The "particular and peculiar facts" in this case

simply do not show that appellee "entered" his vehicle while intoxicated. *Cleary, supra*, at 201, holds:

> "It clearly was not the intent of the legislature to encourage intoxicated persons with impaired facilities and very questionable judgment, and with the capability of putting the vehicle in motion, *to climb* behind the wheel and be in a position to put the motor vehicle in motion." (Emphasis added.)

*Cleary* does *not* hold that one should be punished for *refusing* to drive when impaired.

To put this case in proper perspective, we must recognize that in all probability, 1) appellee consumed enough alcohol to become intoxicated; 2) he shouldn't have attempted to drive home; and 3) he belatedly realized his ability to drive was impaired, whereupon he stopped driving.

The trial court did not find that appellee deserves a medal. Neither do we. However, the state's interest in protecting users of our streets and highways is served not only by arresting those who operate their vehicles while intoxicated but also by encouraging those unable to drive to pull off of the road. See *Mentor* v. *Giordano, supra*, at 145 (primary object of statutes making DUI an offense is to protect users of streets and highways from hazard of drunk drivers).

To accept the state's argument would result in a statutory violation in every such situation where an individual is "operating" a vehicle regardless of the circumstances giving rise to such operation. Under such a wide-reaching rule, the individual who consumes too much alcohol in the privacy of his own home and then enters his motor vehicle parked in his driveway for the sole purpose of moving the vehicle into his garage would violate R.C. 4511.19 if he was unfortunate enough to fall asleep while behind the wheel of the vehicle and be found by a passing law enforcement officer. We do not believe such is the purpose behind the *Cleary* decision or R.C. 4511.19.

Since "each 'drunken driving' case is to be decided on its own particular and peculiar facts," *Giordano, supra*, at 146, we believe that the rule established in *Cleary* would recognize an exception where an intoxicated person voluntarily pulls his car off of the roadway with the obvious intent to wait until he is sober before again attempting to drive. Under no circumstances should this be interpreted as this court granting its imprimatur to an intoxicated individual's climbing behind the wheel of a vehicle and operating same. However, since there is no evidence in the case at bar that appellee was intoxicated when he entered his vehicle and thereafter operated it before pulling into the Jones driveway, it is possible that appellee did not become "intoxicated" until already on the road, or even after he had pulled off. To hold otherwise under these facts, would significantly increase the level of risk by encouraging drivers to try to make it home regardless of their physical condition. This is a message we refuse to send.

With these considerations in mind, we overrule the state's assignments of error and affirm the decision of the trial court dismissing the charges against appellee.

*Judgement affirmed.*

KOEHLER, J., Concurs.
YOUNG, J., Dissents.

YOUNG, J., dissenting:

The majority has resorted to semantic gymnastics in an effort to distinguish this case from *State* v. *Cleary* (1986), 22 Ohio St. 3d 198. A fine distinction is drawn between entering a vehicle while intoxicated or merely being in the driver's position in such a state. The bottom line is that the supreme court sought to prohibit persons who are intoxicated from being in a position of control of a vehicle.

The majority fears that to convict appellee would create a risk of other drunk drivers trying to make it home. I think the opposite message would be sent. If you are under the influence, don't drive or put yourself in a position of control of a vehicle. If you do, you pay the penalty.

*Cleary, supra*, controls. I dissent.