OPINION
This is an appeal from the Lake County Court of Common Pleas. Appellant, Anthony Rendina, appeals his conviction for driving under the influence of alcohol.
Appellant was issued a citation on July 4, 1997, for driving under the influence of alcohol ("DUI"), in violation of R.C.4511.19(A)(1), in the city of Mentor, Ohio. On July 28, 1997, the Mentor Municipal Court set bond at $20,000. On August 4, 1997, appellant waived his right to a preliminary hearing. The matter was transferred to the Lake County Court of Common Pleas on August 13, 1997.
On October 27, 1997, the Lake County Grand Jury indicted appellant on one count of operating a motor vehicle while under the influence of alcohol and/or drugs, a felony of the fourth degree. Appellant waived his right to be present at the arraignment on December 8, 1997. Initially, appellant entered a plea of not guilty. On April 17, 1998, appellee, the state of Ohio, filed a motion in limine requesting that the trial court refuse to allow appellant to introduce certain evidence into the case. Specifically, appellee requested that the testimony of appellant's expert witness, Roknedin Safavi ("Safavi") be prohibited. Apparently, Safavi wanted to testify as to a sleep disorder problem that may have been involved in this case. Appellee's motion in limine indicated that these statements would be irrelevant and confusing. Defense counsel argued that he predicated appellant's defense on R.C. 2901.21, which discusses acts that are committed while in a sleeping pattern. The trial judge reasoned that this "is not an original felony charge. And although it becomes a felony, it only becomes a felony because of the accumulation of numerous misdemeanors." The trial court subsequently granted appellee's motion in limine and prohibited Safavi's testimony.
A trial took place on April 21, 1998. Prior to the commencement of the trial, appellant also waived his right to a jury trial. Defense counsel stipulated that appellant had previously been convicted of or pleaded guilty to three or more violations of R.C. 4511.19(A) or (B) within the last six years.
The following facts were adduced from the bench trial. On July 4, 1997, Officer Bramley ("Bramley") of Mentor-on-the-Lake Police Department testified that at about 2:00 a.m., while he was traveling on Lake Shore Boulevard in the city of Mentor, he observed a vehicle cross over the center line, which caused him to swerve his cruiser to avoid a collision. Bramley activated his overhead lights after he witnessed appellant's automobile travel left of center a couple more times. Appellant did not appear to see Bramley's lights, so Bramley hit his siren briefly, but appellant continued driving. Eventually, he shined his side spotlight on appellant's side view mirror and got appellant's attention. After he approached the car, he ordered appellant out of the vehicle. As appellant exited the auto, Bramley noticed that he was very sluggish and appeared intoxicated. He noticed a smell of alcohol emanating from appellant and stated that "[appellant] had very little balance. He was swaying, staggering. He * * * was using the trunk more or less to lean on to give himself support." Bramley dispatched the city of Mentor Police Department regarding the incident since it was in their jurisdiction.[1]
Shortly thereafter, units from the city of Mentor Police Department arrived at the scene.
Following Bramley's testimony, Officer Valley ("Valley") was called to the stand and related that he was contacted through a dispatch that a Mentor-on-the-Lake officer had stopped a vehicle that was being driven dangerously and that the driver was probably intoxicated. As he approached appellant, he detected an odor of alcoholic beverage and saw that appellant's eyes were glassy. Valley indicated that appellant's speech was slurred and he was difficult to understand. He administered field sobriety tests. He instructed appellant on the finger-to-nose test, but noticed that appellant immediately lost his balance. Appellant attempted the test again, but almost fell down. At this point, Valley realized that appellant's "balance was way off" and that he should discontinue the tests for safety reasons. He placed appellant under arrest, read him his rights, and took him to the police station. Appellant admitted that "he had two beers at the bar." While at the police station, appellant refused to take a Breathalyzer test after Valley read him the consequences of such refusal. At the close of appellee's case-in-chief, appellant moved for a judgment of acquittal, which was overruled.
Appellant's stepdaughter, Bridgette Varnju ("Varnju"), was called to the stand. Varnju stated that she considers appellant her father even though he is her stepfather. She testified that on the night in question, she received a telephone call from her father to pick him up at a bar. According to Varnju, she drove appellant and appellant's work truck home and her boyfriend drove his vehicle home. She recalled that her father did not appear drunk. She explained that he appeared no different than normal. Varnju arrived at home first with her father's truck around 9:30 p.m., then her boyfriend parked in back of her, and inadvertently the keys were left in the ignition.[2] After they arrived home, appellant showered and changed. They all ate dinner and watched television. She indicated that her dad retired around 11:00 p.m. or 11:15 p.m. Varnju said that she did not see her father ingest any alcohol while at home. She mentioned that they usually kept no alcoholic beverages in their home. She maintained that she went to sleep around 1:00 a.m. and did not hear her father leave the house.
When Varnju left for work the following morning, she noticed the rear door of the home was open and the car was missing. She stated that her father had sleeping problems which she had observed. She declared that "[h]e tosses and turns constantly. * * * He kicks blankets, rubs his feet together and he sits up and just starts screaming and hollering." She also recalled him getting up and eating, "walk[ing] around [to] pick things up." On cross-examination, Varnju admitted that when her father was in a sleep-like trance, he would not answer her if she tried conversing with him.
At the conclusion of Varnju's statements, appellant's wife, Suzette Rendina ("Suzette"), averred that since she has been married to appellant he has had a sleeping disorder. She indicated that appellant constantly thrashes and carries on conversations. She also stated that she has witnessed appellant screaming and cussing at his co-workers while sleeping. Suzette testified that there have been nights where appellant became abusive by getting on top of her, choking her and punching her. Suzette declared that even though appellant is sleeping, he looks like he is awake. He has done housework and used a microwave in his sleep. She mentioned that appellant sought Safavi's help for his sleep disorder.
On cross-examination, Suzette indicated that she was able to tell when appellant was asleep as opposed to awake. She asserted that when he was asleep, he had a glazed look on him and "[h]e [didn't] have a clear grasp of what [was] going on around him * * *." She also stated that when appellant was in a sleep-like state he would not answer anyone and his balance was unaffected.
Appellant spoke in his own behalf. He maintained that around 7:00 p.m., on July 3, 1997, after work, he and some co-workers went to a pub to cash their checks and have a couple drinks. He recalled that he had "three to four [beers]. Possibly five." He explained that because it was a long weekend and there would probably be several officers patrolling the streets, he did not want to drive, so he called his daughter to drive him home. He mentioned that Varnju drove her car home and her boyfriend followed in appellant's truck. After reaching his home, appellant stated that he showered, changed his clothes, ate and watched television with his family. At 11:00 p.m., he retired for the night. He also testified that he did not drink any alcohol.
Furthermore, appellant maintained that he has had a sleeping disorder his entire life. He warranted that, in his opinion, his disorder had progressed. He began seeing Safavi one month before the July 1997 arrest. Appellant asserted that he had no recollection of operating a motor vehicle on the morning in question. He indicated that he remembered going to bed and then waking up next to a police cruiser. He declared that he was either barefoot or that his tennis shoes were untied. He also believed that he was wearing a pair of jogging shorts and a T-shirt.
On cross-examination, appellant acknowledged that he performed the field sobriety tests while he was awake. He stated that he did so poorly because he was confused and horrified and had no idea how he got there. He also testified that he did not refuse to take the Breathalyzer test, but he "just wasn't cooperating with anybody." He recalled that he had never driven a vehicle several miles from his home while he was sleeping. At the conclusion of appellant's testimony, defense counsel renewed the motion for acquittal and requested that the trial court consider Safavi's opinion.
The trial court reasoned that it was overruling appellant's motion for acquittal and rejecting appellant's position pertaining to blackouts or the sleep disorder because:
 "[I]t can only go to the knowledge and purpose commonly called intent. Because those elements of knowledge and purpose are not part of the criminal elements of DUI, in this case a felony DUI because of the accumulation of the number of DUI's involved here. * * * The fact remains that without the drinking, forget the driving, forget the sleep disorder, without the drinking, the DUI charge would not have occurred."
At the conclusion of the bench trial, appellant was found guilty of one count of DUI, a fourth degree felony, in violation of R.C. 4511.19. The matter was referred to the Adult Probation Department for a presentence investigation and report and to the Lake County Psychiatric Clinic for a drug and alcohol evaluation. Sentencing was deferred to a later date and bond was continued in the amount of $2,000 on a surety basis.
At the sentencing hearing, which took place on June 3, 1998, the trial court addressed appellant's motion for stay of execution pending the disposition of the appeal by this court. The motion was overruled because it was filed at 8:01 a.m. and at 8:27 a.m., no sentence had been entered. At the sentencing hearing, appellant testified that he was sorry and disturbed by what happened, and he maintained his innocence. After appellant spoke, the trial court indicated that it would sentence him to the minimum term. In a judgment entry dated June 5, 1998, appellant was sentenced to twenty-four months of community control with the condition that he serve a mandatory term of sixty days in jail to commence on June 6, 1998. Further, appellant was ordered to pay a $750 fine and his license was suspended for a period of three years. On June 5, 1998, appellant filed a notice of appeal and now asserts the following as error:
 "The trial court improperly granted [appellee's] motion in limine [sic] wherein [appellant's] expert witness, Roknedin Safavi, M.D., was prevented from giving his expert opinion, thereby preventing [appellant] from raising defenses on his behalf, all in violation of [R.C.] 2901.21(C)(2) * * *."
Appellant's sole contention is that the trial court committed an abuse of discretion when it improperly granted appellee's motion in limine since it prevented Safavi from giving his expert opinion regarding appellant's sleeping disorder defense. Appellant proffered that Safavi would have testified that appellant committed the offense while he was sleep walking. Appellant did not renew his objection to the trial court's granting of appellee's motion in limine
prior to the commencement of trial; thus, he has waived the right to argue the issue on appeal. State v. Grubb
(1986), 28 Ohio St.3d 199, paragraph two of the syllabus. Nevertheless, in the interests of justice, we will address the merits of the issue.
R.C. 4511.19(A)(1) provides, in pertinent part, that: "[n]o person shall operate any vehicle * * * within this state, if * * * [t]he person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse * * *." The elements of the offense are: (1) operating a vehicle; (2) within the state; (3) while under the influence of alcohol and/or drugs. "It is well established that R.C. 4511.19(A)(1) imposes strict liability."State v. Moine (1991), 72 Ohio App.3d 584, 587. Further, R.C.4511.19(A)(1) does not designate any degree of culpability. Id. Strict liability statutes are mainly concerned with the end result of the actor's conduct, and thus, his or her purpose for mens rea
is irrelevant. State v. Squires (1996), 108 Ohio App.3d 716, 718.
To determine whether a violation of R.C. 4511.19(A)(1) has occurred, the term "operate" is to be broadly construed to facilitate the legislative purpose. State v. Cleary (1986),22 Ohio St.3d 198, 200. The Supreme Court of Ohio held that:
 "[The] [o]peration of a motor vehicle within the contemplation of R.C. 4511.19(A) is a broader term than driving and a person in the driver's position in the front seat of the vehicle with the key in the ignition while under the influence of alcohol or any drug of abuse can be found in violation of the statute." Id. at paragraph one of the syllabus; see, also, State v. Gill (1994), 70 Ohio St.3d 150, 152.
Moreover, "driving" and "operating" are not synonymous. Cleary at 199.
 "This statute [R.C. 4511.19(A)(1)] has been reviewed and amended over the years and the General Assembly continues to adhere to the word `operate.' Therefore, the prohibition contained in the statute is against `operating' a vehicle while under the influence, not merely `driving' it. The term `operating' encompasses a broader category of activities involving motor vehicles than does `driving.' Many jurisdictions have found that a person may operate a vehicle even though the vehicle is not moving. Operation of a motor vehicle within contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat with the ignition key in his possession indicating either his actual or potential movement of the vehicle while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1)." Id.
One of the main purposes of R.C.4511.19 is to discourage individuals from placing themselves in situations where they can cause the movement of an automobile while under the influence of alcohol or drugs. Gill, supra, 70 Ohio St.3d at 154; see, also, State v. Blanton (1997), 121 Ohio App.3d 162,168. "`(* * *) Probable cause [for an arrest] exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. (* * *)'" Dixon v. Maxwell (1964), 177 Ohio St. 20,21, quoting Henry v. United States (1959),361 U.S. 98, 102.
 "[Thus,] the question becomes whether it `plainly indicates a purpose to impose strict criminal liability for the conduct described in such section.' R.C. 2901.21(B). * * * The act of driving a vehicle while under the influence of alcohol (or drugs, or a combination of both) is a voluntary act in the eyes of the law, and the duty to refrain from doing so is one that in the interests of public safety must be enforced by strict criminal liability without the necessity of proving a culpable state of mind. * * * A review of the statute discloses that the legislature has defined the offense in terms of the factual presence of an alcoholic influence, without reference to the offender's mental state." Moine, 72 Ohio App.3d at 587.
In the case sub judice, since appellant was charged with DUI, which is a strict liability offense, the culpable mental states of purpose and knowledge do not come into play. Thus, Safavi's testimony, which would have alluded to appellant's mental state of mind, would be irrelevant. Further, this case is unlike a situation where the defendant in a DUI situation presents the testimony of a physician who offers a report that the defendant's condition at the scene was consistent with the physical signs associated with a diabetic problem. Here, the proffered report of Safavi went to appellant's mental state rather than the physical manifestations, which were consistent with excessive alcohol ingestion, viewed by the officers in arresting him for DUI.
Additionally, in the case at bar, the testimony of the officers readily established that appellant exhibited the classic indicia of intoxication at the time of his arrest. It was 2:30 a.m., appellant had an odor of alcohol emanating from his body, his speech was slurred, his eyes were glassy, and he was unable to keep his balance. Moreover, Valley conducted the finger-to-nose test, which appellant was unable to perform. Valley stated that he conducted no other test because he feared for appellant's safety since he was unable to keep his balance. Additionally, appellant also had three other DUI's in the past six years. Accordingly, when considered as a whole, the facts surrounding appellant's arrest were sufficient to support a finding of probable cause. Furthermore, although Safavi was prevented from testifying as to the sleep disorder, appellant, his wife and his daughter testified about appellant's sleep walking episodes. It is our determination that the trial court did not improperly grant appellee's motion in limine.
We also note that appellant relies on State v. LaFreniere
(1993), 85 Ohio App.3d 840. However, that case can be distinguished from the case at hand because LaFreniere dealt with a murder whereas this case deals with DUI, a strict liability crime. In addition, in LaFreniere, purpose was the culpable mental state of mind.
For the foregoing reasons, appellant's assignment of error is without merit. Thus, the judgment of the Lake County Court of Common Pleas is affirmed.
NADER, J., concurs,
O'NEILL, J., dissents with Dissenting Opinion.
[1] The record reveals that Bramley was traveling within Mentor City limits on his way back to Mentor-on-the-Lake when he witnessed appellant cross the centerline. His testimony was introduced to show what he observed. Since the issue of Bramley's legal ability to effectuate the stop was not raised, it will not be addressed in this opinion.
[2] The record is unclear as to whether the keys were left in the ignition of appellant's truck or in the ignition of Varnju's boyfriend's vehicle.
 DISSENTING OPINION