DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Sandusky County Court, District No. 1, Clyde, Ohio, which, following a jury verdict, found appellant, William R. Houlett, III, guilty of (1) driving under the influence, in violation of R.C.4511.19(A)(1); (2) operating a motor vehicle while under a driver's license suspension, in violation of R.C.
 {¶ 2} 4507.02(D)(2); and (3) failing to register his motor vehicle, in violation of R.C. 4503.11. On November 25, 2002, with respect to the driving under the influence conviction, appellant was sentenced to 180 days in jail, fined $500, plus costs, and his Ohio operator's license was suspended for a period of three years. With respect to the operating a motor vehicle while under a driver's license suspension conviction, appellant was sentenced to 180 days in jail, fined $150, plus costs, and his Ohio operator's license was suspended for a period of three years. Appellant was additionally fined $100 for the registration violation. Appellant appeals his conviction and raises the following sole assignment of error:
 {¶ 3} "There was insufficient evidence introduced at trial to sustain the jury verdict of guilty."
 {¶ 4} Specifically, appellant argues that there was no direct evidence to support the contention that he was operating a motor vehicle. According to appellant, the witnesses testified that appellant exited the driver's side of an RV type vehicle, but did not state that they observed appellant either behind the wheel of the vehicle or driving the vehicle. Appellant argues that the interpretation of operating a motor vehicle, as explained byState v. Cleary (1986), 22 Ohio St.3d 198, and State v.McGlone (1991), 59 Ohio St.3d 122, "cannot be expanded to include a person exiting the drivers side of an RV type vehicle." As such, appellant argues that there is insufficient evidence upon which to find him guilty of either R.C. 4511.19(A) or R.C.4507.02(D)(2).
 {¶ 5} In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the law concerning the probative value of circumstantial evidence and the standard of review to be employed by appellate courts when reviewing an issue concerning insufficiency of the evidence:
 {¶ 6} "1. Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. * * *
 {¶ 7} "2. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *" Jenks, paragraphs one and two of the syllabus.
 {¶ 8} R.C. 4511.19(A)(1) states in pertinent part that "[n]o person shall operate any vehicle * * * within this state, if * * * [t]he person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse." R.C. 4507.02(D)(2) states in pertinent part that "[n]o person, whose driver's or commercial driver's license or permit or nonresident operating privilege has been suspended * * * shall operate any motor vehicle upon the highways or streets within this state during the period of suspension." R.C. 4503.11 states in pertinent part that "no person who is the owner or chauffeur of a motor vehicle operated or driven upon the public roads or highways shall fail to file annually the application for registration or to pay the tax therefor."
 {¶ 9} With respect to the meaning of "operation of a motor vehicle," the Ohio Supreme Court in Cleary, 22 Ohio St.3d 198, stated:
 {¶ 10} "1. Operation of a motor vehicle within the contemplation of R.C. 4511.19(A) is a broader term than driving and a person in the driver's position in the front seat of the vehicle with the key in the ignition while under the influence of alcohol or any drug of abuse can be found in violation of the statute.
 {¶ 11} "2. Entering a motor vehicle, putting the key in the ignition and starting and engaging the engine in a stationary position are sufficient acts to constitute operation within the meaning of R.C. 4511.19(A)(1)." Cleary at paragraphs one and two of the syllabus.
 {¶ 12} In this case, Frances McElwain, owner of the Vickery Tavern ("Tavern"), testified that, on October 10, 2002, appellant and Tim McDonald entered the Tavern during the day, possibly before lunch, and had a few drinks. McElwain testified that she served appellant at least two Jack Daniels. According to McElwain, appellant was actually at the bar twice that day. The first time, he had some drinks and then was driven away by Buddy Wilber in a truck. Soon thereafter, a phone call came in concerning a case of beer that appellant allegedly had purchased, but not received. Shortly after the phone call, appellant returned to the Tavern for the beer. McElwain testified that upon appellant's second departure, she observed appellant drive off in a small recreational vehicle ("RV"). Although McElwain stated that she did not actually see appellant enter the RV, she saw appellant in the driver's seat of the RV as it was going out to the street.
 {¶ 13} Nicole Noftz, bartender at the Tavern, testified that appellant was at the Tavern when she arrived for her shift at 10:45 a.m. and stayed until approximately 3:30 or 4:00 p.m. Noftz also testified that she served appellant two or three shots of Jack Daniels and approximately two to three beers, in addition to whatever McElwain had served him prior to Noftz's arrival to work. Noftz's account of events during the afternoon was substantially similar to McElwain's. According to Noftz, approximately 30 to 40 minutes after appellant left the bar, she received a phone call from McDonald regarding the beer that he and appellant had allegedly purchased. Noftz testified that McDonald told her that appellant was on his way to pick up the beer. Within a minute of McDonald's phone call, Noftz saw an RV back in toward the building and strike a bush. Immediately thereafter, Noftz saw appellant exit the driver's door of the RV. Appellant then came storming into the bar to retrieve the beer he claimed to have purchased. Noftz testified that, during this encounter, appellant's speech was slurred and he appeared drunk. Noftz, however, did not witness appellant driving off. Noftz also testified that McElwain called the police regarding this incident.
 {¶ 14} David Deyo, a patron in the Tavern that afternoon, testified that approximately 20 minutes after appellant left the bar, the bartender received a call from McDonald stating that appellant had bought a case of beer at the bar and that appellant was coming down to get it. According to Deyo, he heard a vehicle with a noisy exhaust in the parking lot. He got up and looked out the window, where he saw "the vehicle come in full speed in reverse towards the building." Deyo jumped to the side, because he thought it was coming through the window. The RV hit the retaining wall, which was made of railroad ties. At that point, Deyo looked back out the window to see "who in the heck was that," and saw appellant getting out of the driver's side of the vehicle. Deyo saw no one else in the vehicle in which appellant had arrived. Deyo, however, did not see appellant leave in the RV. Deyo also testified that McElwain called the police regarding this incident.
 {¶ 15} Deputy Jason Reel testified that he responded to a call to the police, which identified appellant as the assailant, regarding a disturbance at the Tavern. Reel proceeded directly to McDonald's home where it was believed appellant could be found. Reel found appellant in the front yard, noticeably intoxicated and hostile. In response to Reel's questions, appellant completely denied being at the Tavern. Reel also testified that appellant's driver's license was under suspension. According to Reel, the RV described by those at the Tavern was located behind McDonald's residence. The RV's hood was still warm. Reel further testified that the RV was last registered in appellant's sister's name and that the vehicle was not registered at the time of the offense. Deputy Scott Mezinger also testified regarding appellant's obvious intoxication, belligerence, and the condition of the RV.
 {¶ 16} Upon review of the evidence presented at trial, we find that there is sufficient evidence, both direct and indirect, which, if believed, would convince the average mind, beyond a reasonable doubt, that appellant was operating the RV in question, while under suspension, and that he was intoxicated during its operation. See Jenks at paragraph two of the syllabus. McElwain testified that she actually witnessed appellant behind the wheel of the RV as it was pulling into the street. Both Noftz and Deyo testified that, immediately after the RV struck the bush and retaining wall in front of the Tavern, they saw appellant exit the driver's side of the RV. McElwain and Noftz both testified regarding the amount of Jack Daniels and beer appellant consumed while in the tavern. Additionally, Noftz and both deputies testified regarding appellant's obvious intoxication, slurred speech, and odor of alcohol. Furthermore, the issues of appellant's driver's license being under suspension and the RV not being registered in accordance with R.C. 4503.11
are not disputed by appellant. Accordingly, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Id. Appellant's sole assignment of error is therefore found not well-taken.
 {¶ 17} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and that the convictions and sentences of the Sandusky County Court, District No. 1, Clyde, Ohio, are hereby affirmed. Court costs of this appeal are assessed to appellant.
Judgment affirmed.
Handwork, Knepper and Lanzinger, J., concur.