DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Williams County Court of Common Pleas which, on September 9, 2005, following a jury trial, awarded appellee, Jason A. Chehi, $1,050,000 in damages, and his wife, Danielle Hanna, $50,000 in damages, against appellant, Nicholas R. Keifer.[1] For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On appeal, appellant raises the following assignments of error:
 {¶ 3} "I. The trial court erred when deciding that appellant owed appellees a duty.
 {¶ 4} "II. Assuming arguendo that appellant owed a duty, the trial court erred in finding that the duty was not discharged as a matter of law.
 {¶ 5} "III. The trial court erred by removing issues of appellee's comparative negligence from the jury.
 {¶ 6} "IV. The trial court erred in allowing appellees to introduce evidence of collateral sources and then giving a curative jury instruction over objection."
 {¶ 7} The undisputed facts at the time summary judgment was filed were as follows. Chehi was an employee of the Montpelier Auto Auction ("Auto Auction") in Bryan, Ohio. Auto Auction was in the business of selling vehicles, some of which were inoperable. It was typical for cars on the premises to be pushed and moved to various locations.
 {¶ 8} On December 10, 2002, Chehi was moving cars in the un-lit parking lot of Auto Auction. At approximately 6:30 p.m., Chehi was walking across the parking lot with another employee, Ronald Giesige, when Chehi was struck from behind by a 40-foot long recreational vehicle ("RV"). The RV had no power, lights, brakes, horn, and almost no steering capabilities. The RV was being pushed by a tow truck that was driven by Clemeth Federspiel, an employee of Auto Auction, into a new location. Appellant was in the driver's seat of the RV. The tow truck driver could not see anything in front of the RV. Because the RV was not attached to the tow truck, the plan for stopping the RV was to allow it to coast to a stop.[2]
 {¶ 9} Appellees filed suit against appellant on October 31, 2003, alleging that appellant caused Chehi's injuries by negligently operating the RV. Appellees also asserted that they were entitled to punitive damages because appellant's conduct was "reckless, malicious, and in conscious disregard to the rights of others and with actual malice."
 {¶ 10} On January 30, 2004, appellant filed a motion for partial summary judgment and asserted that he was entitled to judgment as a matter of law against appellees on the issue of punitive damages. Specifically, appellant argued that there was no evidence that his actions were willful or malicious, and that he was entitled to summary judgment as a matter of law. In an attached affidavit, appellant stated that he climbed into the driver's seat of the RV and attempted to start it, but it would not, so he "put the automatic transmission in neutral," and the RV was pushed with a tow truck. After the RV traveled approximately 15 feet, Chehi walked in front of the motor home. Appellant first saw Chehi when he was approximately three to four feet from the RV. Without success, appellant yelled out the driver's side window at Chehi and back toward the tow truck to get Federspiel to stop. Appellant further attested that it was not until the motor home was moving that he realized the brakes did not work and that there was no horn.
 {¶ 11} On June 7, 2004, appellees filed their response to appellant's motion for partial summary judgment on the issue of willful conduct, and filed a motion seeking summary judgment in their favor on the issues of liability, lack of contributory negligence, and lack of assumption of the risk. With respect to appellant's motion for summary judgment regarding willful conduct, appellees argued that it was an issue for the jury to determine.
 {¶ 12} With respect to the issues of liability, however, appellees asserted that appellant's conduct of "guiding a large silent [RV] without power, in the dark, without lights, without brakes, without a horn, with no ability to warn or stop, and without an ability to communicate with the tow truck pushing the [RV], in an area where other pedestrian workers were known to be walking," was negligent. Following the accident, due to multiple fractures, to his pelvis, leg, arm and ribs, collapse and bruising of his lung, respiratory distress syndrome, injuries to his hip, back, ankle, bladder, urethra, muscle spasms, kidney stones, nerve damage, and a closed head injury, Chehi attested that he spent 17 days in the hospital, a number of months in a nursing home, had medical expenses in excess of $350,000, had not been able to return to work, and may never walk normally again.
 {¶ 13} With respect to the issue of contributory negligence, appellees argued that there could be no defense of contributory negligence where the tortfeasor's conduct was wanton. Additionally, appellees argued that there was no evidence that Chehi knew the RV was moving. Chehi attested in his affidavit, attached to his motion for summary judgment, that he did not know the RV was going to be moved at the time he was run over: "When Ron and I were walking to move other cars, I was hit in the back by [an RV]. I was dressed in a yellow-hooded sweatshirt with the hood up. I did not see the [RV] moving at anytime. I did not know the [RV] was in motion nor did I know the [RV] was going to hit me. I did not hear any type of engine noise or any other noise to warn of the [RV]. I did not hear any horn. I did not hear Ron Giesige, Jr. or anyone else yell or make any noise at me about getting struck before I was injured. I saw no lights from the vehicle coming upon me, and heard no warning whatsoever that I was about to be hit. As such, I was hit in the back by the [RV], in a place workers like me frequently walk to do their jobs."
 {¶ 14} Giesige, who was next to Chehi at the time of the accident, also attested in his affidavit that he "did not know that the [RV] was being moved at the time it hit [Chehi]." According to Giesige, when he and Chehi had walked past the RV before they crossed the lot, the RV was not moving. "The first indication to [Giesige] that the [RV] was being moved was when it hit [Chehi]." Based on his observations, Giesige attested that Chehi had no notice that the RV was moving. The RV had no guiding lights, no horn that sounded, no engine noise, no squealing brakes, and, although Giesige became aware of the RV and moved out of the way at the last moment, Chehi did not look back at the RV before it struck him in the back.
 {¶ 15} On June 21, 2004, appellant responded to appellees' motion for summary judgment. In appellant's response, he only replied to appellees' argument that appellant's conduct was wanton. Appellant stated in his response brief: "Again, theDefendant, Nicholas R. Keifer, submits that his conduct wascertainly negligent, but that the known risk was not so substantially great as to make his conduct wanton." (Emphasis added.) Appellant asserted that his "behavior may not be characterized as wanton, because [he] saw no great probability of harm moving a vehicle in a car lot." Appellant made no assertions that he was not negligent, or that Chehi was contributorily negligent or had assumed the risk. Likewise, appellant did not bring to the trial court's attention any Civ.R. 56(C) evidence to contradict appellees' motion for summary judgment regarding negligence and comparative negligence.
 {¶ 16} On July 29, 2004, appellees dismissed their claim for punitive damages against appellant, without prejudice. On August 4, 2004,[3] the trial court granted appellees' motion for summary judgment. Specifically, the trial court held that reasonable minds could only conclude that appellant was negligent, Chehi was not contributorily negligent, and that appellees were damaged as a proximate result of appellant's negligence. The trial court further held that the jury or fact finder shall only be provided with jury verdict forms in favor of appellees, and that there would be no opportunity for a verdict in appellant's behalf.
 {¶ 17} On September 8, 2004, new counsel entered his appearance on appellant's behalf. On September 16, 2004, appellant filed "Defendant's Motion for Reconsideration of Decision on Motion for Summary Judgment." Appellant argued that the trial court should reconsider its previous order granting summary judgment in appellees' favor and allow appellant to present evidence of liability and comparative negligence. In particular, appellant argued that a genuine issue of material fact existed with respect to the issue of negligence. Appellant stated in his motion for reconsideration:
 {¶ 18} "At the time of rendering the decision, this Court had before it a complete copy of the deposition transcript of [appellant]. (See Deposition Transcript of Nicholas Keifer filed on May 21, 2004). In his deposition, [appellant] testified:
 {¶ 19} "[Chehi] was walking beside the [RV] before [appellant] opened the door and went into the driver's seat. Id. at 19. [Chehi] would have seen [appellant] get in the [RV] because he was walking toward the area of the door. Id. at 27. [Chehi] was about halfway up the side of the [RV] when the [RV] began to move. Id. at 19.
 {¶ 20} "The mobile home was moving forward at approximately 3-4 miles per hour at the time of the accident. Id. at 15. Then, [Chehi], who had been walking westward began walking in a southwestwardly direction causing [Chehi] to walk in front of the [RV]. Id. at 16; 27.
 {¶ 21} "When [appellant] saw [Chehi] walk in front of the [RV], he tried to get the attention of [Chehi]. Id. at 17. He started to hit the brakes, tried the horn, and then stuck his head [out] of the driver's window telling [Chehi] to stop. Id. at 23.
 {¶ 22} "When [Chehi] cut in front of the [RV], he was at most three to four feet in front of it. Id. at 28. There was no way for [appellant] to swerve to avoid [Chehi]. Id. at 28."
 {¶ 23} Appellant asserted that there was no demonstration that he owed Chehi a duty. And, even if appellant owed Chehi the duty of ordinary care, appellant argued that the evidence demonstrated that a genuine issue of material fact existed with respect to whether appellant breached the duty of ordinary care owed to Chehi. Appellant also argued in his motion for reconsideration that there were genuine issues of material fact concerning Chehi's comparative negligence. In support, appellant pointed out that Giesige was able to react in sufficient time to avoid being struck and that Chehi should have kept a look out in the parking lot. Finally, appellant argued that it was inappropriate for the trial court to find that proximate cause was established for purposes of summary judgment when appellees had not attached any medical testimony or other direct evidence establishing proximate cause.
 {¶ 24} On October 6, 2004, appellees responded to appellant's "motion for reconsideration." Appellees argued that a motion for reconsideration is not appropriate in the trial court and, even so, the motion did not raise any issue that could not have been addressed by appellant in his response to appellees' motion for summary judgment. Appellees reiterated that the evidence before the trial court at the time of summary judgment supported the findings that appellant was negligent and that Chehi had not assumed any risk. Finally, regarding the issue of proximate cause, appellees asserted that it is undisputed that Chehi was run over by the RV and that he sustained multiple injuries therefrom.
 {¶ 25} Appellant replied to appellees' response to his motion for reconsideration on October 18, 2004. Appellant replied that he owed no duty to Chehi because "he was not driving or operating the motor home at the time of the accident." In fact, appellant attached a new affidavit, filed October 20, 2004, to his reply brief which stated that he did not start the RV because it would not start and that he "was not required to shift gears because the motor home was already in neutral." Appellant asserted that because the RV was disabled, he could not have driven or operated it as a matter of law and, thus, did not owe Chehi any duty.
 {¶ 26} On October 26, 2004, the trial court denied appellant's motion for reconsideration outright, without any comments or findings. The matter was eventually heard by a jury in a three day trial commencing on September 7, 2005, wherein the jury awarded appellees judgment in the total amount of $1,100,000.
 {¶ 27} Appellant's first, second and third assignments of error concern the trial court's granting of summary judgment in appellees' behalf and, therefore, will be considered together. In particular, appellant argues that he owed no duty, breached no duty, and the issue of comparative negligence should have been determined by a jury.
 {¶ 28} We first note that appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. SciotoCty. Bd. Of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St .2d 64, 66; Civ.R. 56(C).
 {¶ 29} The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280, 294. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 30} Because appellant additionally filed a motion for reconsideration, we also note that Civ.R. 54(B) states that a decision which adjudicates less than an entire claim "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." The trial court's August 5, 2004 judgment did not determine the amount of damages suffered by appellees, as this issue was to be decided by the trier of fact. As such, the trial court's decision finding appellant liable, and determining that Chehi was not contributorily negligent, was subject to revision prior to the final judgment being entered.
 {¶ 31} Although he admitted negligence in his response to appellees' motion for summary judgment, appellant argues on appeal that such an admission cannot be considered for purposes of summary judgment because it does not conform with the type of evidence required by Civ.R. 56(C).[4] Additionally, although he did not dispute the issue of negligence in response to appellees' motion for summary judgment, appellant argues that summary judgment was inappropriately granted on the issue of negligence because there was no evidence that appellant owed a duty to Chehi insofar as appellant was not operating or driving the RV at the time of the accident.
 {¶ 32} Although not defined in terms of establishing liability, the term "operation" has been defined by the Ohio Supreme Court to mean more than just "driving." State v. Cleary
(1986), 22 Ohio St.3d 198, 199. Lower courts have defined the term "operate" to include "`not only the motion of the vehicle, but also acts which engage the machinery of the vehicle that alone or in sequence, will set in motion the motive power of the vehicle.'" State v. Cole (1992), 62 Ohio Misc.2d 70, 72, citing, State v. Wymbs (1984), 10 Ohio Misc.2d 26, 27.
 {¶ 33} This court, however, has found that a person who was steering a vehicle that was being towed by another vehicle was not operating the towed vehicle because he was merely "guiding, not driving, * * * and was not in actual physical control of it * * *." City of Toledo v. Burks (1955), 100 Ohio App. 127,131. In determining the meaning of control, this court stated, "it may be observed that * * * having a car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances, [citation omitted] or that it can be brought to a stop within a reasonable degree of celerity [citation omitted]." Id.
 {¶ 34} Appellant relies on Burks in arguing that he was not operating the RV in this case because he had no control over it, did not steer it, could not stop it, and could not operate it since it had no power of its own. We disagree. First, we findBurks is distinguishable from this case, since Burks involvedtowing, not pushing, as in this case. Second, we find that appellant's own affidavit testimony established his "operation" of the RV.
 {¶ 35} In his initial affidavit, filed January 30, 2004, appellant stated that he was helping Federspiel move vehicles on the lot. In doing so, appellant attested that he entered the RV and, because it would not start, placed it into neutral.[5]
By placing the RV into neutral, Federspiel was able to roll the RV forward, which, of course, was the plan for moving it.[6] Appellant helped move the RV in this fashion even though he knew that Federspiel could not see in front of the RV, since he was 40 feet behind it, that the RV had no power, and that the plan for stopping it was to allow it to coast to a stop.[7] Appellant testified in his deposition that it was his role in moving the RV to guide it to the extent he could. We recognize that no one had control over the RV, to the extent that it could not be readily stopped once appellant and Federspiel got it rolling, but that does not negate the fact that appellant's actions aided in the "operation" and movement of the RV.
 {¶ 36} Moreover, we find that the RV's operation was entirely unreasonable and unsafe. Appellant knew that he and Federspiel were moving the RV in an area where workers would be walking in the dark, yet did not have any warning system or lights, to enable pedestrians to notice movement of the RV, or have any way to stop the RV. In fact, appellant could not even contact Federspiel in the tow truck. Given all of the factors in this case, we find that reasonable minds could only conclude that appellant owed appellees a duty to operate the RV with ordinary care, and that he breached that duty.
 {¶ 37} Appellant also argues that the trial court erred in granting summary judgment because appellant breached no duty owed Chehi, insofar as Chehi darted in front of the moving RV, giving appellant no time to react or avoid the collision. In support of his argument, appellant relies on McDonald v. Lanius (Oct. 28, 1993), 3d Dist. No. 9-93-23, which held that a driver is not liable to a person who unexpectedly goes in front of a moving vehicle:
 {¶ 38} "If a person goes unexpectedly in front of a moving automobile which is being prudently managed and controlled by the driver, who is unable, by the exercise of ordinary care and prudence, to avoid injury to such person, the driver is not liable. 7 Ohio Jurisprudence 3d (1978), 498, Automobile and Other Vehicles, Section 318." Lanius.
 {¶ 39} In this case, however, we find that the RV was not being "prudently managed and controlled" by appellant. Appellant did not exercise "ordinary care and prudence" in operating the RV because he undertook to move it without having any ability to stop it. Moreover, unlike the driver in Lanius, who could not have anticipated the child darting into rush hour traffic, appellant had a duty to anticipate that Chehi would be in the parking lot, having just seen him there, and should have known that, unless Chehi was warned that the RV would be moving, could cross in front of the rolling, silent, dark, RV.
 {¶ 40} Finally, appellant argues that there is a genuine issue of material fact concerning the issue of comparative negligence. We note at the outset that appellant never set forth specific facts in the record, pursuant to Civ.R. 56(E), to establish the existence of a genuine issue of material fact with respect to the issue of comparative negligence. See Dresher,
supra. On appeal, appellant asserts that Chehi disregarded his own safety by walking in an area where disabled vehicles were routinely moved. Appellant opined in his deposition that Chehi should have known that the RV would be moving, since Chehi would have seen appellant enter the RV. Even if we construe the facts in favor of appellant and consider his subjective belief to be true, we nevertheless find that there is no evidence that Chehi ever saw the RV move or that he should have anticipated that a 40-foot long RV would be silently moved across a dark parking lot with no lights, horn, or ability to stop.
 {¶ 41} Based upon the foregoing, we find that there are no genuine issues of material fact which preclude the granting of summary judgment. Reasonable minds could only find that appellees were entitled to summary judgment on the issues of negligence and contributory negligence. Appellant first, second and third assignments of error are therefore found not well-taken.
 {¶ 42} In his fourth assignment of error, appellant argues that the trial court erred in allowing appellees to introduce evidence of collateral sources, and then give a curative jury instruction in this regard. Specifically, appellant argues that appellees chose to submit medical bills that showed payment by the Bureau of Workers' Compensation and then later sought a curative jury instruction which was given by the trial court:
 {¶ 43} "When you determine the amount of the award to Jason Chehi you should not diminish his damages by reason of the fact, if it is a fact, that, as a result of his injuries, Jason Chehi may have received payment, benefits, benefits from his employer, workers' compensation benefits or disability benefits."
 {¶ 44} Appellant raised the issue of a curative jury instruction in a motion in limine, but failed to object to the jury instruction when given the opportunity during the course of the trial. The failure to object to the giving or failure to give a jury instruction prior to the time that the jury retires to deliberate waives a party's right to raise this issue on appeal. Civ.R. 51(A). Having failed to raise a timely objection, we find appellant's fourth assignment of error not well-taken.
 {¶ 45} On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J. Skow, J. Concur.
[1] The jury verdict was awarded on September 9, 2005, and the entry was journalized on September 22, 2005.
[2] Appellant's deposition testimony regarding stopping the RV was as follows:
"Q. When you got to the northwest corner, how were you going to be able to stop the mobile home?
"A. There were no cars right in here.
"Q. On the northwest side?
"A. Yes. So we was going to bring it around to the front and push it back.
"Q. Okay. So it was going to be a coasting situation?
"A. Yes.
"Q. Okay. So apparently, [Federspiel] knew that there wasn't any brakes on the mobile home, then?
"A. More than likely, yes.
"Q. Because he had already planned to come around, let you coast, catch up in front of you, and then slow it down again?
"A. Yes." (Appellant's Deposition, taken January 7, 2003, p. 36.)
[3] The trial court's judgment entry was journalized on August 5, 2004.
[4] "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." Civ.R. 56(C).
[5] Appellant filed a later affidavit on October 20, 2004, stating that he was not required to shift gears because the RV was already in neutral. Appellant, however, gave no explanation for this contradictory change in testimony. This court has consistently held that a nonmoving party may not defeat a motion for summary judgment by creating an issue of fact by filing, without explanation, an affidavit that contradicts earlier testimony. Mack v. Nationwide Mut. Fire Ins., 6th Dist. No. L-04-1180, 2005-Ohio-2746, ¶ 23.
[6] See footnote 2, supra, Appellant's January 7, 2003 Deposition, p. 36.
[7] In his January 30, 2004 affidavit, appellant stated that he did not know that the brakes did not work until after the RV was moving, but this statement inexplicably contradicts his January 7, 2003 deposition testimony that his and Federspiel's plan was to allow the RV to coast to a stop. Again, a nonmoving party may not defeat a motion for summary judgment by creating an issue of fact by filing, without explanation, an affidavit that contradicts earlier testimony. Mack, supra at ¶ 23.