OPINION
{¶ 1} This is an appeal from the Ashtabula County Court of Common Pleas, Eastern Division, convicting appellant, William R. Beesler, of Driving Under the Influence ("DUI") in violation of R.C. 4511.19(A)(1), a misdemeanor of the first degree.
 {¶ 2} On March 4, 2001, Denise Houser and David Richey were traveling east in separate vehicles when they observed a vehicle, traveling west, weave left of center. After nearly colliding with two other vehicles and a telephone pole, the vehicle came to an abrupt stop in the middle of the highway. The vehicle then turned into a motel parking lot with Houser and Richey in close pursuit.
 {¶ 3} The witnesses testified that the vehicle pulled into a parking place and struck a railroad-tie situated at the front of the parking place. Houser called the police from a phone in the motel laundry room while Richey watched the stationary vehicle. As she walked to the laundry room, Houser passed the vehicle and observed a male in the front seat who she later identified as appellant. Richey testified he maintained continuous surveillance over the vehicle while waiting for the police to arrive. During this time, Richey indicated that no one entered or exited the vehicle.
 {¶ 4} When the police arrived at the motel, they approached the vehicle and observed appellant asleep in the driver's seat. One of the officers ran the license plate through the Law Enforcement Automated Data System "(LEADS") and discovered that the vehicle was apparently registered under appellant's son's name. Ultimately, after putting appellant's name through LEADS, the officer determined that appellant's license was suspended.
 {¶ 5} One of the officers knocked on the window and appellant awoke. According to the officer, appellant was groggy, and spoke slowly. When asked to exit the vehicle so the officer could perform a field sobriety test, appellant stumbled and appeared unsteady. Based upon appellant's performance on the field sobriety tests, appellant was arrested for driving under the influence and for driving under suspension.
 {¶ 6} Appellant was tried on January 23, 2002 for driving under the influence and driving under suspension. The trial judge acquitted appellant of the driving under suspension charge, pursuant to Crim.R. 29. At trial, the crucial issue was whether appellant was operating the vehicle while intoxicated. Houser's and Richey's testimony established that a male they later identified as appellant, was driving the swerving vehicle. Alternatively, appellant testified that a woman he met at a bar was driving his car when the witnesses observed it swerving. Appellant maintained that once the vehicle came to rest in the motel parking lot, the woman took his keys, $50, and departed the vehicle posthaste. Testimony established that although appellant was in the driver's seat of the vehicle when the police arrived, the ignition keys could not be located.
 {¶ 7} The jury found appellant guilty of driving under the influence and the trial court sentenced appellant to a term of 180 days imprisonment and suspended his operator's license for 1,080 days. Appellant now raises the following assignments of error:
 {¶ 8} "[1.] Appellant's conviction for driving under the influence was against the manifest weight of the evidence.
 {¶ 9} "[2.] The trial court erred in overruling defense counsel's objection to the exclusion of written witness statements taken by officers the evening of the arrest."
 {¶ 10} In his first assignment of error, appellant contends that his conviction is against the manifest weight of the evidence because the state failed to establish he was "operating" the vehicle pursuant to the statute. In support of this claim, appellant notes that although the arresting officers found him intoxicated in the driver's seat of his parked car, the keys to the vehicle were never located. As such, the state failed to prove the fundamental elements of the crime.[1]
 {¶ 11} An appellate court reviewing a claim that the verdict is against the manifest weight of the evidence, must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witness and determine whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In effect, a manifest weight claim involves determining whether there exists a greater amount of credible evidence to support one side of the issue over the other. Id. Manifest weight is not a question of mathematics but depends on its effect in inducing belief. Id.
 {¶ 12} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. "[T]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thomas, 11th Dist. No. 2001-L-185, 2003 Ohio 1584, at ¶ 16, citing, State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 13} In the current case, appellant was convicted under R.C.4511.19(A)(1) which provides, in relevant part, that: "no person shall operate any vehicle * * * within this state, if * * * the person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse * * *." Thus, the elements of the offense are (1) operating a vehicle; (2) within the state; (3) while under the influence of alcohol and or drugs. State v. Rendina (Dec. 23, 1999), 11th Dist. No. 98-L-129, 1999 Ohio App. LEXIS 6269, at 12.
 {¶ 14} To determine whether a violation of R.C. 4511.19(A)(1) has occurred, the term "operate" is to be broadly construed to facilitate the legislative purpose. State v. Cleary (1986), 22 Ohio St.3d 198, 200. One of the main purposes of R.C. 4511.19 is to discourage individuals from placing themselves in situations where they can cause the movement of an automobile while under the influence of alcohol or drugs. Rendina, supra, at 14; see, also, State v. Blanton (1997), 121 Ohio App.3d 162,168.
 {¶ 15} Further, the Supreme Court of Ohio has held that: "[The] operation of a motor vehicle within the contemplation of R.C. 4511.19(A) is a broader term than driving and a person in the driver's position in the front seat of the vehicle with the key in the ignition while under the influence of alcohol or any drug of abuse can be found in violation of the statute." Cleary, supra, at paragraph one of the syllabus; see, also, State v. Gill (1994), 70 Ohio St.3d 150, 152. As such, "driving" and "operating" are not synonymous. Cleary, supra, at 199.
 {¶ 16} Accordingly, the Supreme Court has established a bright line test which confines "operation" of a parked vehicle within the meaning of R.C. 4511.19 to those instances in which the key is in the ignition and the offender is found in the driver's seat. See, e.g., Statev. Wright (2000), 137 Ohio App.3d 88, 91; see, also, Kirtland v. Andrews
(Aug. 27, 1999), 11th Dist. No. 98-L-137, 1999 Ohio App. LEXIS 3983.
 {¶ 17} Moreover, the "key in the ignition" requirement is unnecessary where a vehicle is capable of operation without an ignition key. Kirtland, supra, at 8-9. Thus, to be convicted under 4511.19(A)(1) while in a parked vehicle, the state must prove, beyond a reasonable doubt, a defendant was in the driver's seat with either the key in the ignition or a demonstration that the vehicle was capable of being operated without the key.
 {¶ 18} In the current matter, it is undisputed that appellant was under the influence of alcohol while sitting behind the wheel of his car. However, when the arresting officers arrived on the scene and aroused appellant from his slumber, the keys were not in the ignition. In fact, after a search of appellant, his vehicle, and the immediate surrounding area the keys were nowhere in sight. Moreover, one of the arresting officers testified that no tests were conducted to determine whether the car was capable of operation without a key. As such, at the time of his arrest, appellant was not "driving under the influence" insofar as he was not legally operating the vehicle. Thus, the focal issue at trial was whether appellant was, at some point prior to his arrest, legally operating the vehicle in his condition.
 {¶ 19} The state presented witness testimony to support its claim that appellant was, prior to the arrest, operating the vehicle. Specifically, Houser and Richey each testified to observing appellant's vehicle swerve left of center and nearly collide with two other vehicles and then strike a pole. Appellant's vehicle subsequently came to a complete stop in the center of the highway at which point Richey stated he drove past appellant's vehicle and noticed that a male was operating the vehicle. Appellant's vehicle then veered into a motel parking lot with Richey and Houser surreptitiously in tow. According to the witnesses, the vehicle entered a parking space and struck a railroad tie parking abutment. It was at this time that Houser called the police. Richey testified that he maintained continuous observation of appellant's vehicle until the police arrived and that no one exited or entered the vehicle in the meantime.
 {¶ 20} Appellant's construction of the facts differs substantially from Houser's and Richey's testimony. To wit, appellant testified that he met a woman named "Lisa" at a bar with whom he intended to spend some time that night at the aforementioned motel. To this end, appellant testified that he gave "Lisa" his car keys because he was too intoxicated to drive. Accordingly, "Lisa" chauffeured appellant to the motel; however, after the vehicle stopped in the motel parking lot "Lisa" jumped from the car and ran, escaping with appellant's keys and $50 from his wallet. Appellant maintains that this episode explains why his keys were never located and similarly exculpates him from his DUI conviction.
 {¶ 21} The jury heard both appellant's and the state's witnesses' versions of the incident. On one hand, although appellant's keys could not be located at the time of the arrest, the testimony of Houser and Richey categorically established that appellant was the party driving the vehicle immediately prior to the officer's arrival. On the other hand, appellant maintained that an unidentified woman drove him to the motel and, once there, purloined his keys along with $50 from his wallet.
 {¶ 22} Each version of the facts differs fundamentally in materially relevant aspects. However, when conflicting testimony is presented at trial, a conviction is not against the manifest weight simply because the jury believed the prosecution's testimony. State v. Jile, 9th Dist. No. 21230, 2003 Ohio 963 at ¶ 17, citing State v. Gilliam
(Aug. 12, 1998), 9th Dist. No. 97CA006757, 1998 Ohio App. LEXIS 3668. Insofar as appellant relies almost exclusively upon the implications of the conflicting testimony for his argument, we cannot find his conviction against the manifest weight of the evidence.
 {¶ 23} Establishing an appellant was "operating the vehicle" via recourse to witness observation rather than through an officer's direct observation is a permissible strategy. There is no hard and fast rule requiring a police officer to observe the erratic driving of an individual to validly arrest him for driving under the influence of alcohol. State v. Pelsue (May 23, 1997), 11th Dist. No. 95-P-0149, 1997 Ohio App. LEXIS 2245, at 7, citing State v. Henderson (1990),51 Ohio St.3d 54, 56. In essence, the jury found the state's witnesses more credible than appellant. We cannot say that, in doing so, it clearly lost its way and created a manifest miscarriage of justice. Therefore, appellant's first assignment of error is without merit.
 {¶ 24} In his second assignment of error appellant argues that the trial court erred in overruling his trial counsel's objection to its exclusion of written witness statements taken by officers on the night of the arrest.
 {¶ 25} It is well established that the trial court has broad discretion to admit or exclude evidence. State v. Davie (Dec. 27, 1995), 11th Dist. No. 92-T-4693, 1995 Ohio App. LEXIS 6064, at 31, citing Statev. Hymore (1967), 9 Ohio St.2d 122, 128. Therefore, absent an abuse of discretion, the trial court's decision will stand. Nelson v. Ford MotorCo. (2001), 145 Ohio App.3d 58, 68. An abuse of discretion involves more than error in judgment; it implies the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 26} In support of his second assignment, appellant claims that Ohio Evid.R. 607 permits a party to impeach another so long as he or she has a reasonable basis for doing so. Appellant submits that his desire to test the credibility of the state's witnesses via their prior witness statements was reasonable. After a review of the record and the statements in question, we find no specific inconsistencies. However, even if we found appellant's statements and testimony inconsistent, Evid.R. 613 tempers Evid.R. 607 and thereby requires impeachment via extrinsic evidence to be "of consequence to the determination of the action." Evid.R. 613(B)(2)(a). In our view, none of the alleged inconsistencies rise to this level.
 {¶ 27} For instance, appellant asserts that Houser testified that appellant's car hit a pole, but her statements reflect that he hit a curb. These statements are not necessarily inconsistent with one another. That this fact was not established during trial is likely a function of an underdeveloped examination of the witness. However, its omission does not imply that the testimony and the statements are inconsistent.
 {¶ 28} Moreover, assuming arguendo, that the omission is tantamount to an inconsistency, the court did not abuse its discretion by failing to admit the statements. Evid.R. 613(B) governs the use of extrinsic evidence in relation to a witness' prior inconsistent statement. The rule provides, in relevant part: "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply: * * * (2) The subject matter of the statement is one of the following: (a) A fact that is of consequence to the determination of the action other than the credibility of a witness."[2]
 {¶ 29} Whether appellant's vehicle "ran into a curb" is not of necessary consequence to the determination of whether appellant operated a motor vehicle under the influence of alcohol.
 {¶ 30} Further, appellant maintains "[a]nother inconsistency is that there was no mention of * * * [appellant's vehicle] coming to a complete stop in the middle of the street so that [Houser] could get a good look at the driver and the car." It is clear that Houser neither testified at trial nor indicated in her statements that she got a "good look" at the driver when the vehicle came to a complete stop in the street. On the contrary, Houser testified that she was able to identify appellant as the driver only when she passed the vehicle on her way to the motel's laundry room to contact the police. In this respect, we find no ostensible inconsistency with appellant's statements and her testimony.
 {¶ 31} Appellant further suggests that Houser's description of the vehicle at trial was different from her description in her statements. At trial, appellant stated that the vehicle was "bluish-gray." Appellant's statement indicates that the car was "b" or "bl." Again, this disparity is not necessarily an inconsistency. However, even if this disparity is read as an inconsistency, it does not necessarily concern a fact of consequence to the litigation. Evid.R. 613(B)(2)(a). That is, the vehicle's color is a collateral matter, inconsequential to the determination of whether appellant operated a motor vehicle while under the influence of alcohol.
 {¶ 32} Finally, appellant maintains that Houser's statements and her testimony conflicted with respect to her description of which direction appellant's vehicle was traveling. However, we are unable to find any such inconsistency. To wit, Houser testified at trial that the vehicle was "going Westbound." Similarly, in her statements, Houser indicated that the vehicle was "coming from [the] East" and "coming Westbound." In our view, there is no inconsistency between these descriptions: If one is going westbound, he is also coming from the east and coming westbound. Therefore, appellant's contention that Houser's testimony and statements concerning the direction the vehicle was traveling were inconsistent is inaccurate.
 {¶ 33} In our view, the trial court did not abuse its discretion when it overruled appellant's objection regarding the exclusion of Houser's statements. As the trial judge explained:
 {¶ 34} "I've carefully reviewed Court's Exhibit 1 and 2 and I have very carefully listened to the testimony, and there may be what I would characterize as very minor inconsistencies, number one; and, number two, I think there may be inconsistencies that are the result of an incomplete examination. In other words, there may be a fact or two that came out or didn't come out on direct that's in the statements or vice versa. But I find that these are essentially very consistent statements. * * *."
 {¶ 35} Therefore, the trial court was not unreasonable, arbitrary, or unconscionable in its exclusion of the written statements. As such, appellant's second assignment of error is without merit.
 {¶ 36} For the foregoing reasons, the judgment of the Ashtabula County Court, Eastern Division, convicting appellant of DUI is hereby affirmed.
Judgment affirmed.
[1] Insofar as appellant is attacking the adequacy of the evidence offered by the state to support his conviction, his claim represents more a challenge to the sufficiency of the state's evidence than a challenge to the manifest weight of the evidence.
[2] It is worth pointing out that Evid.R. 613(B)(2)(a), is a codification of the common law collateral matter doctrine. Under this rule, a prior inconsistent statement relating to a collateral matter may not be proved via extrinsic evidence. Hence, if an attorney questions a witness about a prior statement concerning a collateral matter, he or she must accept the witness' answer because extrinsic evidence is not available to prove a prior statement embracing a collateral matter. See Weissenberger's Ohio Evidence, 2002 Courtroom Manual, p. 271.