OPINION
{¶ 1} Defendant-Appellant, Cory C. Foster, appeals a judgment of the Napoleon Municipal Court, convicting him of operating a motor vehicle while under the influence of alcohol. Foster contends that the trial court erred in not granting his motion to suppress the results of a breathalyzer. Foster also maintains that there was not sufficient evidence to show that he had a prohibited blood alcohol level at the time he operated his vehicle. After reviewing the record, we find that the trial court had before it sufficient evidence to find that the breathalyzer was administered within two hours of Foster operating his vehicle. We also find that there was sufficient evidence to support the trial court's finding that Foster operated the vehicle with a prohibited blood alcohol level. Accordingly, we overrule both of Foster's assignments of error and affirm the decision of the trial court.
 {¶ 2} On December 19, 2003, around 4:00 p.m., Foster was attending a company Christmas party in the Village of Holgate located in Henry County, Ohio. Foster admitted to consuming alcoholic beverages while at the Christmas party. Around 7:00 p.m., Foster and two friends left the Christmas party to retrieve a car belonging to one of Foster's friends that was stranded along a local roadway due to mechanical problems. Foster drove from the party to the stranded car in his white van. Shortly after Foster and his friends arrived at the stranded car, Henry County Sheriff's Deputy Joe Gibson stopped to inquire of the situation. Deputy Gibson observed Foster and his friends connect the stranded car to a truck with a tow strap, observed Foster leave the scene in his white van, and observed the truck towing the stranded car leave the scene. According to Deputy Gibson's testimony, he last saw Foster driving at 8:17 p.m.
 {¶ 3} Soon after leaving the scene of the stranded car, Foster pulled over to the side of the road to alert the driver of the truck towing the stranded car that he was not driving within the lanes. After stopping, Foster's van slid into a ditch alongside the road and became stuck. Neither of Foster's friends in the truck noticed that his van had become stuck, and Foster was forced to hitchhike back to the Christmas party. Subsequent to Foster's van becoming stuck, the truck towing the stranded car also became stuck, and the occupants of the truck had to walk back to the Christmas party.
 {¶ 4} After returning to the Christmas party, Foster and his friends attempted to find means to free their vehicles. Eventually, Foster found someone with a four wheel drive vehicle who was willing to attempt to pull his van out of the ditch. According to Foster and several other defense witnesses, Foster consumed alcoholic beverages between returning to the Christmas party and leaving to retrieve his van. Foster and his friends then drove to his van, but when they arrived they found that Henry County Sheriff's Deputy Shawn Wymer was already on the scene. Deputy Wymer was responding to an earlier call from a motorist reporting that the motorist had picked up a hitchhiker whose vehicle had become stuck in a ditch. The motorist also reported that the hitchhiker smelled of alcohol and appeared intoxicated.
 {¶ 5} Foster approached Deputy Wymer and explained the circumstances of the van being in the ditch. He told the Deputy that he had been at a Christmas party earlier and had gone out with some friends to help them tow a stranded car. He admitted to having consumed alcohol at the Christmas party prior to driving the van, but specifically told Deputy Wymer that he had not consumed any alcohol since he had driven the van.
 {¶ 6} While talking with Foster, Deputy Wymer noticed the smell of alcohol on his person and observed that he had glassy eyes and slurred speech. Based on these observations, Deputy Wymer administered several field sobriety tests, all of which Foster failed. Accordingly, Foster was arrested for driving under the influence of alcohol and transported to the Napoleon Police Department where he was given a breathalyzer. The breathalyzer indicated that Foster had a blood alcohol concentration of .136. Consequently, Foster was charged with operating a vehicle while under the influence of alcohol in violation of R.C.4511.19(A)(1), which prohibits a person from operating a vehicle under the influence of alcohol, drugs, or a combination of them and R.C. 4511.19(A)(3), which prohibits a person from operating a vehicle with a concentration of ninety-six-thousandths of one per cent or more but less than two hundred four-thousandths of one per cent by weight per unit volume of alcohol in the person's blood serum or plasma.
 {¶ 7} Prior to his trial, Foster filed a motion to suppress the breathalyzer results claiming that the test had not been properly administered. Foster raised a number of issues at the suppression hearing including the claim that the breathalyzer had not been administered within two hours of him operating his van as required by R.C. 4511.19(D). After conducting a hearing, the trial court overruled Foster's motion, finding that the test had been administered within two hours of the offense.
 {¶ 8} The matter then immediately proceeded to a bench trial, and the State dropped the R.C. 4511.19(A)(1) driving under the influence of alcohol charge, leaving only the R.C. 4511.19(A)(3) driving with a prohibited blood alcohol concentration charge. Upon the conclusion of the trial, the court found Foster guilty of violating R.C. 4511.19(A)(3). From this conviction Foster appeals, presenting two assignments of error for our review.
 Assignment of Error I Whether there was sufficient evidence at the suppressionhearing to support a finding that a breathalyzer test had beenadministered to Defendant within two hours of his operation of avehicle, as required by R.C. 4511.19(D)(1).
 Assignment of Error II Whether there was sufficient evidence at trial to support afinding that Defendant is guilty of R.C. 4511.19(A)(3) ofoperating a vehicle with a prohibited alcohol concentration.
 Assignment of Error I {¶ 9} In his first assignment of error, Foster contends that the trial court erred in failing to grant his motion to suppress. He claims that the evidence before the trial court was insufficient to prove that the breathalyzer was administered within two hours of him operating a motor vehicle.
 {¶ 10} At a suppression hearing, the evaluation of evidence and credibility of witnesses are issues for the trier of fact.State v. Carter (1995), 72 Ohio St.3d 545, 552, citing Statev. Mills (1992), 62 Ohio St.3d 357, 366. Therefore, we are bound to accept the trial court's findings of fact as true if they are supported by competent and credible evidence. State v. O'Neal,
4rd Dist. No. 5-03-05, 2003-Ohio-5122, at ¶ 11, citing State v.Harris (1994), 98 Ohio App.3d 543, 546; State v. Claytor
(1993), 85 Ohio App.3d 623, 627.
 {¶ 11} R.C. 4511.19(D)(1) provides that "the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation." The Ohio Supreme Court has interpreted this language to require that before the results of a breathalyzer, administered pursuant to R.C. 4511.19, can be introduced into evidence, the state must prove by the affirmative establishment of facts that the bodily substance was withdrawn from the defendant within two hours of the time the alleged violation occurred. City of Cincinnati v. Sand (1975), 43 Ohio St.2d 79, paragraph two of the syllabus.
 {¶ 12} At the suppression hearing, Deputy Gibson testified that he last saw Foster driving at 8:17 p.m. The state then offered into evidence proof that Foster's breathalyzer was administered at 10:15 p.m. This evidence was introduced through the testimony of the officer who administered Foster's breathalyzer and the time printout on the breathalyzer results. Relying on this evidence, the trial court found that the state had proven that Foster's breathalyzer test had been administered within two hours of him operating his van.
 {¶ 13} Foster contends that a discrepancy in the Henry County Sheriff's dispatch log renders this evidence insufficient. According to the dispatch log, Deputy Gibson left the area with Foster and the stranded car at 8:17 p.m., but there was also a portion of the dispatch's log that indicated Deputy Gibson was "on scene" in Holgate at 8:14 p.m. Foster claims that this discrepancy proves that Deputy Gibson did not observe Foster at 8:17 p.m. and that the state failed to prove that the test was administered within two hours of the last time Foster was seen driving. However, a review of the entire record supports the court's conclusion.
 {¶ 14} Upon cross-examination concerning the discrepancy in the dispatch's log, Deputy Gibson stated that it was probably caused by human error and that he was still in the vicinity of Foster and the stranded car at 8:17 p.m. Deputy Gibson explained that "on scene" meant only that he was available to receive calls concerning Holgate, not that he actually was in Holgate.
 {¶ 15} Foster also maintains that there was no proof that the clock used by Deputy Gibson and the clock on the breathalyzer were synchronized. The argument that the clocks were unsynchronized and unreliable was pursued by Foster at the suppression hearing. That argument was not accepted by the trial court, and we find no indication that the trial court acted unreasonably, arbitrarily, or unconscionably. As stated above, in suppression hearings the evaluation of the evidence is an issue of fact for the trial court. Carter, 72 Ohio St.3d at 552.
 {¶ 16} After reviewing all of the evidence before the trial court at the suppression hearing, we find that there was competent and credible evidence that the breathalyzer was administered within two hours of Foster driving his van. Accordingly, the first assignment of error is overruled.
 Assignment of Error II {¶ 17} In his second assignment of error, Foster asserts that there was insufficient evidence to support a finding that he operated a motor vehicle with a prohibited blood alcohol concentration.
 {¶ 18} An appellate court's function when reviewing the sufficiency of the evidence in a criminal case is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89. The Ohio Revised Code prohibits any person from operating a vehicle "if, at the time of the operation * * * [t]he person has a concentration of ninety-six-thousandths of one per cent or more but less than two hundred four-thousandths of one per cent by weight per unit volume of alcohol in the person's blood serum or plasma." R.C. 4511.19(A)(3). Foster's position is that, while there was evidence that he operated the van and evidence that he later had a blood alcohol concentration of .136, there was no evidence before the trial court proving that he had a prohibited blood alcohol level at the time he operated the van.
 {¶ 19} The State's position is that R.C. 4511.19(A)(3) imposes strict liability upon defendants and that any defendant who demonstrates a prohibited blood alcohol level within two hours after operating a vehicle is guilty of violating the statute. The State contends that it only has to prove that the defendant operated a motor vehicle and that within two hours of operating the vehicle the defendant had a prohibited blood alcohol concentration. We find both parties' positions to be erroneous.
 {¶ 20} According to the State, R.C. 4511.19(A)(3) imposes strict liability on defendants. As authority for this novel interpretation of the statute it cites to State v. Cleary
(1986), 22 Ohio St.3d 198, 199; Newark v. Lucas (1988),40 Ohio St.3d 100, 103; State v. Tanner (1984), 15 Ohio St.3d 1, 6. While these cases do stand for the proposition that R.C. 4511.19
is a strict liability crime, the cases speak only to the nature of the mens rea and extent of intoxication needed to impose criminal liability on a defendant. One need not intend to operate a vehicle under the influence of alcohol, nor need one necessarily be intoxicated at the time he operates the vehicle in order to be in violation of R.C. 4511.19. As long as the defendant is operating a motor vehicle and at the time of operation has a prohibited blood alcohol level, he is guilty of violating the statute. The statute is a strict liability crime only in the sense that the legislature has predetermined that it is illegal to operate a vehicle with a certain blood alcohol concentration whether the operator is under the influence of alcohol or not.
 {¶ 21} What these cases do not stand for is the suggested proposition that the state does not have to prove that the defendant had the prohibited blood alcohol concentration at the time he was operating the vehicle. The very language of the statute itself dispels the State's attempted interpretation. R.C.4511.19(A)(3) expressly states that a person is prohibited from operating a vehicle "if, at the time of the operation" the person's blood alcohol concentration is above a certain statutory limit. (Emphasis added.) Following the State's position to its logical conclusion, a person could have nothing to drink at all prior to driving his car to a bar, proceed to consume enough alcohol inside the bar to raise his blood alcohol concentration above the legal limit, leave the bar by foot within two hours of driving there, and be arrested for driving under the influence of alcohol while walking to the bus station. The language of the statute clearly requires the state to prove beyond a reasonable doubt that the defendant's blood alcohol concentration was above the statutory limit at the time he actually operated the vehicle. Nothing in any case or statute even remotely endorses the illogical interpretation the State seeks to promote before us.
 {¶ 22} Based on our analysis above, we find that in prosecutions under R.C. 4511.19(A)(3), the State is required to prove beyond a reasonable doubt that there was a concurrence between the prohibited blood alcohol level and the operating of the vehicle. Herein, the state had the burden of proving that Foster had a concentration of ninety-six-thousandths of one per cent or more but less than two hundred four-thousandths of one per cent by weight per unit volume of alcohol in the his blood serum or plasma at the time he actually operated his van. Accordingly, we must determine whether the evidence was sufficient to prove that Foster had a prohibited blood alcohol level when he operated his van.
 {¶ 23} Foster claims that the results of his breathalyzer test were never properly entered into evidence because the state failed to provide even de minimus evidence at trial concerning the administration and calibration of the breathalyzer. Foster's trial was held immediately after the suppression hearing and before the same trial court. At the suppression hearing, the State had already presented evidence that the breathalyzer had been properly administered and calibrated. In the interests of efficiency and practicality, Foster stipulated on the record prior to the trial that the breathalyzer had been administered and maintained according to the applicable statutory standards. Under these unique facts, when the motion was heard immediately prior to trial and by the same trier of fact, the State was not required to present any evidence at trial regarding the breathalyzer's administration and calibration.
 {¶ 24} Next, Foster claims that the evidence before the trial court was insufficient to prove that his blood alcohol level was above the statutory limit at the time he operated his van. He maintains that even with evidence that he drove his van and that he later had a .136 blood alcohol concentration, there was no proof that he had such a prohibited blood alcohol level at the time he operated his van. Looking at the evidence before the trial court in a light most favorable to the prosecution, we find that a rational trier of fact could have found that Foster's blood alcohol concentration was above the legal limit when he operated his van.
 {¶ 25} At trial, Deputy Wymer testified that Foster admitted to having consumed alcoholic beverages prior to driving his van. Deputy Wymer also testified that he specifically asked Foster whether he had consumed any alcohol since driving the van and that Foster informed him that he had not. Thus, the trial court had before it the fact that Foster admitted to driving the van earlier, that he admitted consuming alcohol prior to driving the van, that he told an officer that he had not consumed any alcohol since driving the van, and that Foster's blood alcohol level was still over the legal limit almost two full hours after he last drove and admitted last drinking. We find that this evidence is sufficient to prove that Foster had a prohibited blood alcohol level at the time he operated the van. See, State v. Lewis
(1999), 131 Ohio App.3d 229, 235. (Holding that the trier of fact could use circumstantial evidence in reaching its conclusion that a defendant had operated a vehicle under the influence of alcohol at an earlier time.)
 {¶ 26} Foster argues that testimony at trial proved that he had consumed additional alcohol in between the time he drove the van and when he returned to retrieve the van. He asserts that this evidence shows that his prohibited blood alcohol level could have been achieved due to consumption that occurred after he drove the van and that the State does not have enough evidence to prove otherwise. The testimony Foster relies on was that of several of his friends and himself. The matter before us comes down to an issue of witness credibility. If the police officer's testimony is believed, there is evidence that Foster did not drink after driving the van and that the breathalyzer test results were due solely to alcohol he consumed prior to driving the van. Thus, the evidence would tend to prove that Foster's blood alcohol concentration was above the statutory limit when he drove the van. If, however, the testimony of Foster and his friends is believed, then there is evidence that the breathalyzer results reflected alcohol consumption that occurred after he drove the van and there would be no evidence that Foster was above the prohibited blood alcohol concentration when he last drove the van.
 {¶ 27} It is axiomatic that the credibility of witnesses is primarily an issue for the trier of fact. Ardrey v. Ardrey, 3rd Dist. No. 14-03-41, 2004-Ohio-2471, at ¶ 17, citing State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Accordingly, this court must afford the decision of the trial court concerning such credibility issues appropriate deference. Id. The trial judge herein, who had the ability to observe the witnesses and their reactions first hand, apparently found the officer to be more credible than Foster and his friends.
 {¶ 28} The trial court had before it evidence that Foster had consumed alcohol prior to driving his van, that he did not consume alcohol after driving the van, and that he had a prohibited blood alcohol level two hours after driving his van. Under the facts and circumstances before this court, and viewing the evidence in a light most favorable to the prosecution, we find that the trial court had before it sufficient evidence to find that Foster violated R.C. 4511.19(A)(3). Accordingly, Foster's second assignment of error is overruled.
 {¶ 29} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Shaw, P.J. and Bryant, J., concur.